UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-md-02183-PAS
CASE NO. 11-cv-20462-PAS

IN RE: Brican America LLC Equipment
Lease Litigation
_____/

### ORDER ON MOTION TO REMAND

THIS MATTER is before the Court on Plaintiffs' Motion to remand Case No. 11-cv-20462 to the Superior Court of California, County of Orange. Defendant PSFS-3, an alleged alter ego of defendant PSFS, removed the case to federal court in California pursuant to the Class Action Fairness Act of 2005. The matter was fully briefed under Ninth Circuit authorities and set for a hearing when the Multi-District Litigation transferred the case to this Court. Six days after transferring into this District, Plaintiffs filed a notification pursuant to Local Rule 7.1(b)(3)(B) that the remand motion had been pending for more than 90 days. After the parties agreed that a hearing was unnecessary, the Court ordered supplemental briefing to address Eleventh Circuit authorities. Based on the Court's review of the pleadings, exhibits and applicable law, Plaintiffs' motion to remand is denied for the reasons set forth below.

I.  **BACKGROUND**

This case involves a purported pyramid scheme perpetrated on unsuspecting medical and dental professionals (collectively "healthcare professionals") whereby they were "swindled into a program to offer advertising for VISO Lasik Medspa[1] services[.]" Am. Compl., ¶2 [DE 1-2].[2]

---

[1] Plaintiffs allege that "VISO Lasik Medspas combine the concepts of Lasik vision correction with '5-Star' health, wellness and beauty concepts in a 'European style' spa. They offer the opportunity to 'permanently zap away fat, 'plump your lips', and 'change the look of your legs' with a 'full bikini' hair removal and get a massage, all with 100% financing." See Am. Compl., ¶1 [DE 1-2].

[2] "DE" shall hereafter refer to docket entries in Case No. 11-cv-20462.

Under the program, flat screen televisions set up in the waiting areas of the healthcare professionals' offices would display educational materials along with advertising for VISO Lasik Medspas to the healthcare professionals' patients, a so-called captive audience. *Id.* As part of the scheme each healthcare professional entered into two agreements: an equipment lease and a marketing agreement. *Id.* Under the equipment lease, each healthcare professional was obligated to pay Brican America LLC or Brican America, Inc. (collectively "Brican") monthly payments totaling approximately $26,000 to lease a flat screen television and a computer.[3] *Id.* Under the marketing agreements, each healthcare professional would receive payments totaling approximately $26,000 from Brican and its affiliate for allowing those parties to advertise in their offices.[4] This arrangement was allegedly marketed to the healthcare professional as a "no cost" business opportunity because the payments from the marketing agreements would effectively pay the monthly installments under the equipment leases. *See* Am. Compl., ¶¶2, 79, 85(e), 114, and 233(a) [DE 1-2]. Plaintiffs' maintain that the combined equipment lease and marketing agreement constitute an investment contract. *Id.* at ¶¶6 and 106.

Problems arose in January 2010 when Brican announced they would no longer make the marketing agreement payments to the healthcare professionals. *Id.* at ¶9 and 125. When the healthcare professionals attempted to cancel the equipment leases and return the equipment,[5] they learned that Brican had assigned the leases to NCMIC Finance Corporation (doing business

---

[3] The display systems were allegedly worth no more than $3,500. *See* Am. Compl., ¶¶74, 86 and 91.

[4] In addition to the $26,000 in payments, the healthcare professionals would receive a "generous" profit sharing arrangement with the owners of VISO Lasik Medspas. *See* Am. Compl., ¶2 [DE 1-2].

[5] Plaintiffs maintain that the marketing agreements contained "put options", which provided that if payments stopped, the Plaintiffs could compel Brican and VISO to buy back the equipment thereby relieving the Plaintiffs of their obligations under the equipment leases. *See* Am. Compl., ¶79.

under the name Professional Solutions Financial Services (hereinafter "PSFS")), and NCMIC Finance Corporation of California ("PSFS-2").[6] *Id.* at ¶¶4, 94, 125-26. Even though Brican was no longer paying the healthcare professionals marketing fees, PSFS and PSFS-2 demanded payment on the equipment leases and ultimately filed suit against Plaintiffs in Iowa state court. *Id.* at ¶¶3, 9, 85(f) and 125-28. The healthcare professionals "no-cost" business opportunity therefore came to an end.[7]

## II. PROCEDURAL BACKGROUND

On April 15, 2010, Plaintiff Vijay Patel individually and on behalf of a class of more than 500 California healthcare professionals (hereinafter referred to as "Plaintiffs"), filed a Class Action Complaint in the Superior Court of California, County of Orange (Case No. 30-2010-00363542) against Brican, PSFS, PSFS-2, Francois Vincens, Jack Lemacon, and VISO Lasik Medspas, LLC. ("VISO").[8] *See* Pls.' Compl. [DE 1-5]. The Complaint asserted nine claims

---

[6] Some Plaintiffs signed equipment leases in which Brican Inc. was identified as the lessor and PSFS became the lessor through an assignment, while others signed equipment leases directly with PSFS where PSFS was identified as the lessor. *See* Am. Compl., ¶6 and 262.

[7] One part of pyramid scheme aspect of Plaintiffs' suit involves the financiers behind Brican. Plaintiffs allege that the PSFS entities agreed to pay Brican $24,000 for each of the leases signed with the Plaintiffs and assigned to the PSFS entities. *See* Am. Compl., ¶¶4, 86-88, and 96-98. The money from the later purchasers was used to pay the "advertising revenue" to the earlier purchasers. *Id.* at ¶3. Considering that there were originally never any VISO Lasik Medspas to generate any profits, Plaintiffs allege the entire program was a fraud from the outset. *Id.* at ¶¶3, 12 ("the plaintiff investors [ ] were tricked into buying the investment contracts.")

[8] Three days before, on April 12, 2010, Plaintiff Vijay Patel filed a nearly identical Class Action Complaint against the same Defendants in the United States District Court for the Central District of California (hereinafter referred to as the "*Patel* federal class action"). *See* Pl.'s Compl. in Case No. 10-00453-AG; docket entry 1 in Case No. 10-cv-22959-PAS. The *Patel* federal class action was filed on behalf of a nationwide class of more than 1,600 healthcare professionals and a subclass of 500 California healthcare processionals. *Id.* at ¶61, 64. The *Patel* federal class action was transferred to this Court by the MDL Panel. *See* docket entries 27, 28 and 29 in Case No.10-cv-22959-PAS.

against Defendants arising out of the pyramid scheme discussed *supra*.[9] *Id.* at pp. 1-2 [DE 1-5]. Plaintiffs served PSFS and PSFS-2 with a summons and original complaint on April 16, 2010. *See* Not. of Removal, Exs. 12 & 13 [DE-1].

Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") on September 2, 2010. *See* Am. Compl. [DE 1-2 through 1-5]. The Amended Complaint added ten new causes of action[10] and several new Defendants, including PSFS 3 Corporation (hereinafter referred to as "PSFS-3"). *Id.* at ¶50 [DE 1-2]. Plaintiffs mailed PSFS-3 a copy of the summons and complaint by certified mail/return receipt on September 3, 2010. *See* Not. of Removal, Ex. 24 [DE -1]. On October 4, 2010, PSFS-3 removed the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1453. *Id.* PSFS-3 alleged that removal was proper because the court has original jurisdiction over the case under the Class Action Fairness Act of 2005 ("CAFA" or the "Act"), Pub.L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). *Id.* at ¶4. Plaintiffs filed a motion to remand the case on October 12, 2010. [DE-11]. After the remand motion was fully briefed, but before the

---

[9] The Complaint asserted claims for (1) Breach of Contract; (2) Breach of Duty of Good Faith and Fair Dealing; (3) Fraud; (4) Negligent Misrepresentation; (5) Unjust Enrichment; (6) Untrue or Misleading Statements in Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*); and (7) Fraudulent, Unfair and Deceptive Business Practices in Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*). Pls.' Compl., pp. 20-28 [DE 1-5].

[10] The Amended Complaint asserts claims for (1) Declaratory Relief; (2) Breach of Contract; (3) Breach of Duty of Good Faith and Fair Dealing; (4) Fraud; (5) Conspiracy to Commit Fraud; (6) Negligent Misrepresentation; (7) Unjust Enrichment; (8) Violation of California Finance Lenders Law Fin. Code §22000, *et seq.* & Civil Code §1029.8; (9) Violations of Corp. Code Sec. 25210 & 25501.5 Recession of Purchase Security From Unlicensed Broker Dealer; (10) Violations of Corp. Code Sec. 25110, 25130, 25503, 25504 and 25504.1 Sale of Non-Qualified Security; (11) Violations of California Corporations Code §§ 25401, 25501, 25504.1 Misrepresentations and Omissions, Material Assistance; (12) Violations of California Corporations Code §§ 25504 Control Person Liability; (13) Breach of Duties; (14) Violation of California Franchise Investment Law California Corporations Code Sections 31000, *et seq.*; (15) Violation of California Seller Assisted Marketing Plan Act (the SAMPs Act) California Civil Code Sections 1812.205 & 1812.206; (16) Violation for Untrue or Misleading Statements and/or False Advertising Cal. Bus. & Prof. Code § 17500, *et seq.*; and (17) Violation of California Unfair Competition Law Bus. & Prof. Code § 17200, *et seq. See generally*, Pls.' Am. Compl. [DE 1-2].

court held a hearing or otherwise ruled on the motion, the Judicial Panel on Multi-District Litigation transferred the case to this Court for consolidation with the *Patel* federal class action (10-22959-PAS), the *Blauzvern* matter (10-20782-PAS) and the *Wigdor* matter (10-21608-PAS). [DE-36, 37].

### III. LEGAL STANDARD

"Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007); CAFA § 2, 119 Stat. at 5. "CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications."[11] *Id.* Under CAFA, district courts have original jurisdiction over class actions where the amount in controversy exceeds $5,000,000, minimal diversity exists and the number of class members exceeds 100. 28 U.S.C. § 1332(d). CAFA makes it easier for litigants to remove class actions to federal district courts by removing the one-year deadline for filing a notice of removal and alleviating the requirement that all defendants must consent to removal. 28 U.S.C. § 1453(b); *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006) (noting that § 1453 overrides the "unanimity rule", the judicially

---

[11] Another stated purpose of CAFA was to address the following problem:

> Multiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity.

See S.Rep. No. 109-14, at 4-5 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 5-6. Why Plaintiff would file an identical state class action only three days after filing a federal class action remains unclear to this Court. Even more unclear, and in fact, troubling, is that counsel for Plaintiffs, as an officer of the Court, would declare under penalty of perjury to the State Court in California that Vijay Patel had not "filed prior class action lawsuits using the same plaintiff's counsel" within the last five years. *See* Not. of Removal, Ex. 15, docket entry 1, page 25 of 25.

developed requirement that each defendant consent to removal). Objections to the timeliness of removal under CAFA, however, do not raise jurisdictional issues. *Petka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010); *see also In re Uniroyal Goodrich Tire* Co., 104 F.3d 322, 324 (11th Cir. 1997) ("The untimeliness of a removal is a procedural, instead of a jurisdictional, defect."). Further, a plaintiff bears the burden of proving that one of CAFA's enumerated exceptions to jurisdiction applies. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).[12]

## IV.   ANALYSIS

### A.   PSFS-3 TIMELY REMOVED THIS ACTION FROM STATE COURT

Plaintiffs first argue that PSFS-3's removal was untimely under 28 U.S.C. § 1446(b), which requires a party to seek removal within 30 days of service. Mot. to Remand, p. 4 [DE-11]. Although Plaintiffs admit that PSFS-3 sought removal less than 30 days after it was served, Plaintiffs argue that PSFS-3 was still untimely because PSFS-3 is the alter ego of PSFS, and PSFS's right to remove had already expired. Plaintiffs maintain that filing an Amended Complaint adding PSFS-3 as a Defendant did not revive PSFS's right to remove. Stated differently, Plaintiffs argue that PSFS-3's right to remove expired before it was added as a Defendant and before it was served a copy of the Amended Complaint. Relying solely on *Bay Guardian Co., Inc. v. Village Voice Media LLC*, No. 09-03833, 2010 WL 329962 (N.D. Cal. Jan. 20, 2010), Plaintiffs state that "[s]ervice upon a related and alter ego corporate entity is not a

---

[12]The Parties agree that Eleventh Circuit law applies to issues involving the timeliness of removal and whether an exception to CAFA applies. Pls.' Supp. Brief, p. 2 and PSFS-3's Supp. Brief, p. 2. *See* docket entries 135 and 133 in Case No. 10-md-02183.

means for reviving the limitations period." Pls.' Sup. Brief, p. 3 [DE-135].[13]

The Court need not decide whether PSFS-3 is PSFS's alter ego or not because the alter ego doctrine does not provide a basis to find PSFS-3's removal untimely.[14] Plaintiffs' reliance on *Bay Guardian* is misplaced. The plaintiff in that case filed suit against three defendants and judgment was entered against them. *Bay Guardian*, 2010 WL329962, at *1. Thereafter, the plaintiff moved to amend the judgment to include an alter ego of the original defendants as an additional judgment debtor. *Id.* After the alter ego removed the case, the district court remanded, in part, because the alter ego did not remove to federal court within §1446(b)'s one-year deadline for removal. *Id.* at *1-2. In other words, the court in *Bay Guardian* did not find that the defendant's status as an alter ego prevented that party from removing the case to federal court, only that the alter ego sought removal outside of the time limits for removal.

*Bay Guardian* therefore stands for the unremarkable proposition that all defendants, including an alter ego of another defendant, must comply with §1446(b)'s one-year deadline for removal. 2010 WL 329962, at *1-2. Nothing in the *Bay Guardian* decision can be read to support the argument advanced in this case that an alter ego of a previously served defendant is not a "defendant" under §1446(b) entitled to remove an action within 30 days of service. Plaintiffs have failed to cite a single authority to support this argument. Instead, the relevant

---

[13]Plaintiffs citation to *Transp. Indem. Co. v. Fin. Trust Co.*, 339 F.Supp. 405, 407 (C.D. Cal. 1972) is of no help here as that decision directly conflicts with *Bailey v. Janssen Pharmaceutical, Inc.*, 536 F.3d 1202 (11th Cir. 2008) as discussed *infra*. *See* Pls.' Mot., p. 9 [DE-11].

[14]In any event, the Court would have concluded, at this stage of the proceeding, that Plaintiffs have failed to establish that PSFS-3 is an alter ego of PSFS. *See Powers v. Fox Television Stations, Inc.* 907 F.Supp. 719, 722 (S.D.N.Y. 1995)(although the ultimate burden of establishing the court's jurisdiction on removal remains with defendant, plaintiff must sustain the burden of proving that defendant is a mere "alter ego" of its parents.) PSFS-3 is a separate corporate entity, capitalized with $500,000 with its own directors. *See* Defs. Resp., pp. 15-17 [DE-27]; Dec. of P. McNerney & Exs. A-G [DE 27-2]. Thus, under the applicable authorities and the present record, Plaintiffs argument that PSFS-3 and PSFS are alter egos fails.

authorities reflect that removal occurs under facts identical to this case routinely and without objection. *See, e.g., Laguna v. Coverall N. Am., Inc.*, No. 09cv2131 JM(RBB), 2009 U.S. Dist. LEXIS 118098, at *7-9, 2009 WL 5125606 (S.D.Cal. Dec. 18, 2009)(alter ego of previously served defendant timely removed to federal court following amendment of CAFA complaint adding alter ego as party).[15]

What remains of Plaintiffs' first argument is a bald assertion that the right to remove under §1446(b) is somehow different for a defendant that is an alter ego of a previously served defendant. Under the Plaintiffs' interpretation of §1446(b), the right to remove for a defendant, and any alter ego of that defendant, expires 30 days after service on the first defendant. In other words, for a defendant served 31 days after its alter ego, that defendant's right to remove expired before it was even served.

Plaintiff's strained interpretation of §1446(b), however, is in conflict with the plain language of that statute as well as the Eleventh Circuit's rule announced in *Bailey v. Janssen Pharmaceutical, Inc.*, 536 F.3d 1202 (11th Cir. 2008). Under those authorities, the last-served defendant rule "permits each defendant, upon formal service of process, thirty days to file notice of removal pursuant to §1446(b)." *Bailey*, 536 F.3d at 1209. Neither the statute nor the Eleventh Circuit's rule is qualified in the manner suggested by Plaintiffs - "*each* defendant" means just that, each defendant has a right to remove within 30 days of formal service of process. *See Bailey*, 536 F.3d at 1207, n.7 (last served defendant rule allowed parent company right to remove

---

[15]The Eleventh Circuit has expressly rejected using the alter ego doctrine to preserve diversity jurisdiction by ignoring the citizenship of a subsidiary and treating the subsidiary as if it were only a citizen of the state of incorporation of parent corporation. *See Fritz v. Am. Home Shield Corp.*, 751 F.2d 1152 (11th Cir. 1985) (Florida incorporation of subsidiary could not be ignored on grounds of alter ego theory and citizenship of California parent could not be imputed to subsidiary to retain jurisdiction).

more than 30 days after service on subsidiaries even where parent and subsidiary companies had same counsel). The undisputed record reflects that PSFS-3 filed a notice of removal within thirty days of formal service of process. PSFS-3's removal was therefore timely.

B.     THE "ANY SECURITY EXCEPTION" TO CAFA DOES NOT APPLY

Where a defendant has successfully met its burden of demonstrating the propriety of removal, a plaintiff may still prevail on a motion to remand upon a showing that one of CAFA's enumerated exceptions applies. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006). Plaintiffs argue that the following exception under §1453 applies:

> (d) Exception.--This section shall not apply to any class action that solely involves--
> ...
> (3) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

28 U.S.C. §1453(d)(3).[16] This is the so-called "Any Security Exception" to CAFA. Relying on *Genton v. Vestin Reatly Mortg. II, Inc.*, 06-cv-2517-BEN, 2007 WL 951838, *3 (S.D. Cal. Mar. 9, 2007), Plaintiffs suggest that a claim "relates to" or is "pursuant to" a security as required by §1453(d)(3) where a party "relies entirely on ownership of that security to bring an action, and alleges no interest that would allow the party to pursue the case other than the ownership in that security." Because all of their claims are based on their ownership interest in the equipment leases and marketing agreements, *i.e.,* the "securities", Plaintiffs urge this Court to remand the

---

[16]The same exception also appears at 28 U.S.C. § 1332(d)(9)(C) for a "class action that solely involves a claim ... that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." Though the sections are interchangeable, the discussion herein will refer to Section §1453(d)(3).

case to California state court. Pls.' Supp. Brief, pp. 6-7 (*see* docket entry 135, Case No. 10-md-02183); Pls.' Mot., p. 11 [DE-11].

Plaintiffs have failed to meet their burden to establish that an exception to CAFA applies here. *Evans*, 449 F.3d at 1164. Even assuming that the combined equipment lease and marketing agreement is "an investment contract and thus a security within the meaning of 15 U.S.C. §77b(1)" as alleged by Plaintiff,[17] all 17 of their claims for relief do not fall within the language of §1453(d)(3) as interpreted by the only two Court of Appeals to address the exception. *See Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009); *Estate of Pew v. Cardarelli*, 527 F.3d 25, 31-33 (2d Cir. 2008). While the Plaintiffs ask this Court to follow the Ninth Circuit's interpretation of that exception, a recent district court opinion from that Circuit reflects that the Ninth Circuit has yet to interpret §1453(d)(3). *See Tuttle v. Sky Bell Asset Mgmt., LLC*, No. C 10-03588, 2011 WL 208060, at *6 (N.D. Cal. Jan. 21, 2011)(citing *Cardarelli* with approval and noting that "[o]ur Court of Appeals has not yet interpreted this provision of CAFA."). The Court finds the Second and Seventh Circuits interpretation of the "Any Security Exception" well-reasoned and persuasive. Those courts both state that §1453(d)(3) applies to suits asserting that the promises made in securities have not been honored but does not apply to suits asserting fraud or other misconduct in the sale of securities. *Katz*, 552 F.3d at 563; *Cardarelli*, 527 F.3d at 31-33. The Second Circuit recently clarified the difference:

> The key distinction between suits that were immune from removal under CAFA and those that were not is that immune suits sought to enforce the rights of the

---

[17]The Plaintiffs' pleadings are silent as to how the Brican "referral" program impacts Plaintiffs' suggestion that the combined equipment lease and marketing agreement constituted a "security." *See* Defs.' Ans., p. 4 (docket entry 83 in Case No. 10-md-02183)("A large number of the same dentists and optometrists who leased an Exhibeo System from NCMIC joined Brican's "referral" program and referred the Exhibeo System sold by Brican to other dentists and optometrists. For every new lease signed up, Brican paid them a $400 referral fee.").

securities "holders as holders." In *Cardarelli*, however, plaintiffs' claim sought to enforce their rights not as holders, but as purchasers; they asserted that the transaction in which they had acquired the notes was tainted by fraud. Thus, the claims did not seek to enforce rights, duties or obligations that were pursuant to or created by the securities, but rather rights granted to consumers by a New York statute. Plaintiffs' suit was therefore removable under CAFA.

*Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2d Cir. 2010)(quoting *Cardarelli*, 527 F.3d at 31)(citations omitted).

Like the Plaintiffs in *Cardarelli*, the Plaintiffs here also claim that the transactions by which they acquired the securities were tainted by fraud. *See* Am. Compl., ¶12, 108 and 109 ("the plaintiff investors [ ] were tricked into buying the investment contracts."). The Amended Complaint includes repeated references to the Plaintiffs having been fraudulently induced into purchasing the "securities." *See, e.g.,* Am. Compl., ¶191("But for the defendants' promises and representations, Plaintiffs and the class ... would not have signed the leases had the truth been known."). Further, the Amended Complaint seeks to enforce rights created by California corporation law, not solely rights created by the Plaintiffs' so-called securities. *See, e.g.,* Count XVI - Violation for Untrue or Misleading Statements and/or False Advertising Cal. Bus. & Prof. Code § 17500, *et seq.,* and Count XVII - Violation of California Unfair Competition Law Bus. & Prof. Code § 17200, *et seq.* Rights granted to Plaintiffs by California statutes are not rights created by the alleged securities in this case, and are therefore not encompassed by §1453(d)(3). *Cardarelli*, 527 F.3d at 31. Finally, Plaintiffs also make numerous allegations that Defendants mis-marketed the investment contracts as a "no-cost" business opportunity. *See* Am. Compl., ¶¶114, 136 and 314(a)-(f). Claims based on the mis-marketing of "securities" to individuals, however, do not fall within §1453(d)(3). *Puglisi v. Citigroup Alt. Inv.*, No. 08 CV 9774, 2009

WL 1515071, at *3 (S.D.N.Y. May 29, 2009)(mis-marketing allegations "do not merely involve disputes over the meaning of terms in securities [under the exception to CAFA.]"). The Amended Complaint therefore does not solely consist claims within the purview of §1453(d)(3). Consequently, Plaintiffs have failed to meet their burden that an exception to CAFA applies. The motion to remand must be denied.

Accordingly, it is hereby

ORDERED that

(1)     Plaintiffs' Motion to Remand [DE-11] is DENIED.

DONE and ORDERED in Miami, Florida, this __10th__ day of March, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record
Magistrate Judge John O'Sullivan
The Honorable Michael D. Huppert