# United States District Court
# Southern District of Florida

Miami-Dade Division

In re: Brican America, LLC, Equipment Lease Litigation,

_____ /

Case No: 10-MD-02183-PAS

This Document Relates to All Actions

Putative Class Action

# Motion for Sanctions Including Striking of Pleadings Against NCMIC Finance Corp., and Embedded Memorandum of Law (Rule 30(b)(6) Deposition)

Plaintiffs, by and through their undersigned attorneys, request that this court enter sanctions against NCMIC Finance Corp., ("NCMIC") including the striking of pleadings, as a result of certain discovery abuses set forth below, and state:

1.  On Dec. 29, 2011, Plaintiffs served their notice of taking a Rule 30(b)(6) deposition of NCMIC on Jan. 17, 2012, after clearing the date with liaison counsel.  (Ex. 1.)

2.  Between Dec. 29, 2011, and Jan. 9, 2012, NCMIC advised Plaintiffs that it would purport to be bound by deposition testimony previously given by other witnesses (most of whom are former NCMIC employees) with respect to several designated matters, would not designate a corporate representative to respond to those designated matters, and would respond with a corporate representative to answer the remaining designated matters.

3.  Plaintiffs opposed such tactic.

4.  On Jan. 9, 2012, NCMIC provided Plaintiffs with a list of the designated matters for

which NCMIC would produce a corporate representative.  (Ex. 2.)

5.    On Jan. 10, 2012, Plaintiffs requested designations of the prior witness' testimony on which NCMIC intended to rely.  (Ex. 3.)

6.    NCMIC advised that it would provide the designations.  (Ex. 4.)

7.    In the interim, NCMIC provided Plaintiffs with case law on which NCMIC relied for the proposition that it could agree to be bound by the deposition testimony of other witnesses rather than produce a designated witness. (Ex. 5.)

8.    Plaintiffs provided NCMIC with case law holding that even by an offer of stipulated facts, NCMIC could not avoid a Rule 30(b)(6) deposition.  *Alfred Bell & Co, Ltd. v. Catalda Fine Arts, Inc.,* 5 F.R.D. 327 (S.D.N.Y. 1946).

9.    On Jan. 13, 2012, at 3:54 p.m., (being the last hour of the last work day before counsel would leave for depositions in Iowa, including the 30(b)(6) deposition of NCMIC) NCMIC finally provided the designations. (Ex. 6.)

10.    The designated portions of the prior depositions are attached as Exhibits 7 through  13.

11.    The transcript of the Rule 30(b)(6) deposition is attached as Ex. 15, and is cited hereinafter as "NCMIC Tr. #."

12.    NCMIC failed to produce a prepared and informed witness to respond to the designated matters, and improperly designated prior witness' testimony as testimony on which NCMIC would rely thereby thwarting Plaintiffs' discovery efforts, and denying Plaintiffs adequate preparation for trial.

13.    The decision by NCMIC to refuse to produce a prepared and informed witness to respond to the designated matters was an intentional, tactical decision.  Accordingly,

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

NCMIC should not be given any opportunity to recover from that failed tactical decision, but rather, should be bound by its results.

14. Accordingly, Plaintiffs seek sanctions against NCMIC which would include providing Plaintiffs with a beneficial inference for each designated matter for which NCMIC failed and refused to produce an informed witness, in addition to other sanctions.

15. As an example of the sanctions requested, in response to a designated matter of "[w]hat, when, why, where and how NCMIC learned of the utilization of any marketing or advertising agreements by Brican America, Inc.," NCMIC advised that it would be bound by the deposition testimony of four past and one present NCMIC employee, including Jean Thompson, who testified that she first learned of the utilization of marketing agreements from her supervisor, Sally Schmaltz.  Because the personnel records of Ms. Thompson reveal that Sally Schmaltz was Ms. Thompson's supervisor between, and only between, Sept., 2004 and Sept., 2005, the result of NCMIC's tactical decision should be an order by this court finding that NCMIC first learned of the utilization of marketing agreements by Brican America between Sept., 2004 and Sept., 2005, precluding NCMIC from attempting to introduce any testimony contradicting those dates.

16. The combination of NCMIC's conduct in failing to provide an informed and prepared witness to testify to the designated matters, its designation of deposition testimony of prior witnesses not responsive to the designated matters, its destruction or failure to produce the paper file maintained by Ms. Henningsen (as presented in a related motion for sanctions filed herewith), and the witness tampering by NCMIC's president (as

3

presented in a related motion for sanctions filed herewith) warrants the most extreme sanction of the striking of NCMIC's pleadings.

17. In the alternative, should this court believe that NCMIC should be given a second chance to provide the requested discovery, then Plaintiffs seek the following sanctions against NCMIC:

   a. NCMIC should be responsible for all costs associated with taking the deposition, including airfare, hotel, rental car, food, videographer and court reporter fees, and attorneys' fees;

   b. In light of the fact that NCMIC has filed third party claims, thus invoking the jurisdiction of this court, Plaintiffs request that this court order NCMIC to produce the informed and prepared witness for deposition in Fort Lauderdale, Florida; and,

   c. The discovery cut-off date should be extended to permit Plaintiffs to obtain the discovery which was wrongly denied them, and said date should be extended to permit Plaintiffs to obtain follow-up discovery.

18. Plaintiffs incorporate the facts referred to below as grounds for this motion.

19. Plaintiffs have incurred attorneys' fees and costs in the bringing of this motion, and request that this court grant it reimbursement of such fees and costs from NCMIC.

Wherefore, Plaintiffs request that this court enter sanctions against NCMIC, including the striking of NCMIC's pleadings for discovery violations set forth below, award Plaintiffs its attorneys' fees and costs for bringing this motion, and Plaintiffs request that this court grant them such further relief as this court deems just.

4

# Memorandum of Law

The law against which the conduct of NCMIC should be measured is accumulated in

*Continental Cas. Co. v. First Financial Employee Leasing, Inc.*, 716 F.Supp.2d 1176, 1189-90

(M.D.Fla.2010)[1]:

> Rule 30(b)(6) governs deposition notices directed to organizations. The deposition notice "must describe with reasonable particularity the matters for examination." Fed.R.Civ.P. 30(b)(6). In response, the organization must designate one or more persons to testify on its behalf as to those matters. *Id*. "The persons designated must testify about information known or reasonably available to the organization." *Id*. As the persons designated represent the corporation just as an individual represents himself at a deposition, *see United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996), the organization's "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The [organization] must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir.2006) (citation and internal quotation marks omitted). [Fn. 21] The organization must prepare the designees "so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fid. Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989).
>
> A corporate party does not satisfy its obligations under Rule 30(b)(6) by merely "producing a designee and [then] seeing what he has to say or what he can cover." *Poole ex rel. Elliott v. Textron, Inc.,* 192 F.R.D. 494, 504 (D.Md.2000). "If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute." *Brazos River Auth.,* 469 F.3d at 433 (citing *Marker*, 125 F.R.D. at 126).
>
> If the designated deponent cannot answer questions regarding the subject matter as to which he is designated, then "the corporation has failed to comply with its

---

[1] Judge Whittemore, the author of the work cited, expressed his opinion immediately following the quoted text that "[t]hese decisions overstate the binding effect of Rule 30(b)(6) testimony," and explains why, under the facts of the case presented to him, some sanctions, but not all of those requested, were warranted.  Further, quoting almost two full pages is the fewest words through which Plaintiffs can present the governing law to this court, thus attempting to fulfill the "less is more" ideal of this court.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Rule 30(b)(6) obligations and may be subject to sanctions." *King v. Pratt & Whitney, a Div. of United Techs. Corp.,* 161 F.R.D. 475, 476 (S.D.Fla.1995). Fed.R.Civ.P. 37(d)(1)(A)(i) authorizes sanctions if a Rule 30(b)(6) designee fails to appear for a deposition, and producing an unprepared Rule 30(b)(6) witness may be sanctionable as a nonappearance under the Rule. *See Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir.1993) (If the organization's Rule 30(b) (6) designee "is not knowledgeable about relevant facts, and the [organization] has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."). [Fn. 22.] Permissible sanctions include an order "prohibiting the [organization] ... from introducing designated matters in evidence," Fed.R.Civ.P. 37(b)(2)(A)(ii), in addition to or in lieu of an award of reasonable expenses, including attorney's fees, caused by the nonappearance. Fed.R.Civ.P. 37(d)(3).

Additionally, some courts have stated generally that when the Rule 30(b)(6) representative claims ignorance of a subject during the deposition, the organization is precluded from later introducing evidence on that subject unless the evidence was previously unavailable. *See Function Media, LLC. v. Google, Inc.,* No.2:07-CV-279-CE, 2010 WL 276093, *1 (E.D.Tex. Jan. 15, 2010) ("When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject."); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.,* 2007 WL 4410370, at *8 (N.D.Tex. Dec. 14, 2007) ("Federal courts have interpreted [Rule 30(b)(6) ] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."); *Ierardi v. Lorillard, Inc.,* Civ. A. No. 90-7049, 1991 WL 158911, at *3 (E.D.Pa. Aug. 13, 1991) ("Under Rule 30(b)(6), [the organization] has an obligation to prepare its designee to be able to give binding answers on behalf of [the organization]. If the designee testifies that [the organization] does not know the answer to ... questions, [the organization] will not be allowed to effectively change its answer by introducing evidence during trial."); *Rainey v. American Forest and Paper Ass'n, Inc.,* 26 F.Supp.2d 82, 94 (D.D.C.1998) ("Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition.").

[Fn. 21] *See also Taylor,* 166 F.R.D. at 362 ("Rule 30(b)(6) explicitly requires [the organization] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the

6

deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial."); *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc.,* 201 F.R.D. 33, 37 (D.Mass.2001) ("Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.").

[Fn. 22]  *See also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.,* 228 F.3d 275, 303-304 (3d Cir.2000) (adopting the *Resolution Trust* rule); *Continental Cas. Co. v. Compass Bank,* No. CA04-0766-KD-C, 2006 WL 533510, *17 (S.D.Ala. Mar. 3, 2006) ("It is the consensus of most federal courts to have considered the issue that a failure to appear at deposition sanctionable under Rule 37(d)(1) includes those circumstances in which a 30(b)(6) corporate designee appears at deposition unprepared to testify."); but *cf. Zappia Middle East Const. Co., Ltd. v. Emirate of Abu Dhabi,* No. 94 CIV-1942(DC), 1995 WL 686715, *8 (S.D.N.Y. Nov. 17, 1995) ("In order for the court to impose sanctions [in this situation], the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas.").

In *QBE Ins. Corp. v. Jorda Enterprises, Inc.,* — F.R.D. —, 2012 WL 266431 *9 (S.D.Fla. Jan. 30, 2012)(Goodman, M.J.), this court very nicely summarized in 39 points "the litigation commandments and fundamental passages about pre-trial discovery" relating to Rule 30(b)(6) depositions.

None of the witnesses on whom NCMIC relies had access to all of the records of NCMIC prior to their deposition from which they could prepare, and none prepared for his or her deposition in the same fashion that Rule 30(b)(6) requires NCMIC to prepare its witnesses. Instead, NCMIC fed them the paperwork which it wanted the witnesses to see, and prepared them only as to those documents.  At no time prior or during those depositions did NCMIC advise Plaintiffs that these witnesses had consented to testify on behalf of NCMIC, and would ultimately be designated by NCMIC as witnesses responsive to any particular designated matter.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

Paula Nuzum **Barkley** met with two of NCMIC's attorneys and its president, Greg Cole, during the week preceding her deposition.  She reviewed no documents as none were offered to her.  She reviewed the transcript of her deposition taken in *NCMIC Finance Corp. v. Brican America, Inc.,* ("Vendor Suit") about two weeks before the meeting to prepare her for her deposition.  Ms. Barkley had been fired by NCMIC, and refused to accept termination pay to leave open the possibility of suing NCMIC for wrongful termination.  (Ex. 20: Barkley pp. 7-9, 19, hereafter "Barkley pp. #.")

Jean **Thompson** met with Mr. Cole and at least one of the attorneys for NCMIC for two hours on the Friday before her Monday deposition.  She reviewed a couple of emails between Jack Lemacon and herself concerning her inquiry of why customers in Minnesota were receiving the marketing or advertising agreement.  Those emails were dated a few months prior to April, 2009.  (Ex. 25: Thompson pp. 7-9, hereafter "Thompson pp. #.")

Fred **Scott** met with two of the attorneys for NCMIC and Mr. Cole for approximately one hour the Wednesday of the week before his deposition of Aug. 17, 2011, to prepare for his deposition.  He was "shown a general vendor agreement, ... a letter that I had written, and then maybe another email."  (Ex. 17: Scott pp. 25-26, hereafter "Scott pp. #.")

Todd **Cook** met with two of the attorneys for NCMIC and Mr. Cole for two to three hours during the week before his deposition to prepare for his deposition.  The only documents he reviewed during that meeting were "parts of the depositions" To the best of his knowledge, although he "didn't pay any attention to it," he looked at documents which were parts of the deposition transcripts.  Todd Cook was fired by NCMIC.  (Ex. 21: Cook pp. 7-8, 17, hereafter "Cook pp. #.")

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Greg **Cole** prepared for his individual deposition by rereading his previous deposition from the Vendor Suit and meeting "for a short period of time" with two of NCMIC's attorneys, maybe one and one-half hours to two hours, "tops." He also looked at the cost breakdown provided by Brican in October, 2008, and two or three of the emails that James Adams and Mr. Cole shared in April, 2009[2]. (Ex. 22: Cole pp. 25-26, hereafter "Cole pp. #.")

NCMIC designated Mr. Cole to testify to all matters beyond those for which NCMIC indicated it was relying on testimony of prior witnesses. (NCMIC Tr. 5-6.) He prepared for the deposition only as to those matters. (NCMIC Tr. 5-6.)

The notice of taking deposition requested that NCMIC produce "[e]very document reviewed by every designated witness in preparation for that designated witness' deposition pursuant to this notice of taking deposition." (Ex. 1.) NCMIC produced 92 pages of documents, 80 pages of which are the sales materials of Brican which did not come into NCMIC's possession (and for some pages, did not come into existence) until after NCMIC stopped funding Brican transactions[3]. (DE 230-2, p. 5.) That leaves only 12 pages of documents (5 1-page sample marketing agreements, 1 1-page NCMIC program of support for Brican America's return policy in case of cancellation of a lease, 1 2-page general vendor agreement, and 2 2-page samples of the leases), out of a universe of over 111,000 pages of

---

[2]These emails had not been previously produced to Plaintiffs.

[3]These 80 pages are part of the post-cut-off-date sales manual that was discussed at the status conference on May 19, 2011, from pages 21 to 33, leading the court to remark to NCMIC's counsel:

THE COURT: Mr. Gallagher and Mr. Verde, what are you going to do with that problem that does raise questions as to whether or not this is the accurate sales pitch data?

documents produced by NCMIC during this litigation, which the witness reviewed to prepare himself to respond to questions about 11 categories of designated matters.  (Ex. 16.)  The witness testified he might also have reviewed one or two emails.  (NCMIC Tr. 8.)  Plaintiffs assert that effort is woefully deficient, resulting in a failure to provide a prepared witness—or, providing no witness at all.  That is sanctionable conduct.

The two cases NCMIC relied on to avoid providing a designated witness are *Novartis Pharmaceuticals Corp. v. Abbott Laboratories,* 203 F.R.D. 159 (D.Del. 2001), and *E.E.O.C. v. Boeing Co.*, 05-cv-3034, 2007 WL 1146446 (D.Arizona).  (Ex. 5.)  *E.E.O.C.* simply relies on *Novartis* without any elucidation; therefore, we will examine *Novartis* and its progeny to determine whether NCMIC properly relied on prior testimony, or whether its conduct is less than that required by our rules of procedure.

*Novartis* was a drug-patent infringement case.  Novartis had already deposed an employee of Abbott Laboratories in his personal capacity, one Dr. Norton, about particle size testing of Abbott's drug, Grengraf.  Novartis sought a 30(b)(6) deposition of Abbott on the same issue.  Abbott contended that Dr. Norton was the most knowledgeable person on the subject, and was the person it would designate under 30(b)(6).  Accordingly, Abbott offered to be corporately bound by the personal testimony of Dr. Norton regarding the particle size testing of Grengraf, rather than to duplicate discovery.  The court found that Dr. Norton was the most knowledgeable witness in the subject area (particle size testing of Grengraf) and would have been the designee for a 30(b)(6) deposition.  Novartis obtained over eighty pages of testimony from Dr. Norton.  Therefore, the court found that Abbott had fulfilled its obligations under 30(b)(6) by agreeing to be corporately bound by the personal testimony of

Dr. Norton rather than duplicating discovery. *Novartis Pharmaceuticals Corp. v. Abbott Laboratories,* 203 F.R.D. at 163.

This particular issue in *Novartis* has been addressed six times. *E.E.O.C. v. Boeing Co.*, 2007 WL 1146446 (D.Arizona), simply relies on *Novartis* without any elucidation; therefore, it is not helpful. Three of the cases, *Eisai, Inc. v. Sanofi-Aventis U.S., LLC,* 2011 WL 5416330 (D.N.J.); *Munich Reinsurance America, Inc. v. American National Ins. Co.*, 2011 WL 1466369 (D.N.J.); and, *LaSalle Nat. Assoc. v. Nomura Asset Capital Corp.*, 2003 WL 21688225 (N.D.Ill.), distinguish *Norvatis* on the basis that the corporation in each case did not offer to be bound by the individuals' depositions. There is nothing in those cases which supports NCMIC's position.

The fifth case is *Requa v. C.B. Fleet Holding Co., Inc.*, 2007 WL 2221146 (D.Col.) where a magistrate judge compelled discovery, including a 30(b)(6) deposition of the corporate defendant. The court noted that a 30(b)(6) deposition is qualitatively different from an individual's deposition. Further, the court noted that "[w]hile prior testimony can be designated by the corporation to satisfy a Rule 30(b)(6) deposition, this is most appropriate when the prior witness is the most knowledgeable on the subject and has previously been deposed by opposing counsel with regard to that topic." *Requa v. C.B. Fleet Holding Co., Inc.*, 2007 WL 2221146 at *2. Unlike *Requa,* in the case at bar, Mr. Scott was not previously deposed on the topic of due diligence of Brican America, other than two discrete components, and there is nothing in the record indicating that Mr. Scott would be the corporate representative most knowledgeable on the subject. Accordingly, *Requa* does not support NCMIC's position.

The last case, and the case most similar to the case at bar, is *Spicer v. Universal Forest*

11

*Products, Eastern Division, Inc.*, 2008 WL 4455854 (W.D.Va.). In *Spicer*, the offending corporation relied on *Novartis* in an unsuccessful effort to avoid sanctions.  The court found that *Novartis* was inapposite because the *Novartis* court found that the "Plaintiff had obtained over eighty pages of testimony from a knowledgeable witness that bound the corporation, [and] the court found that a second deposition would be cumulative." *Spicer*, at *5.  The *Spicer* court noted that four Universal employees had already been deposed, but that fact "does not relieve Universal of its obligations under Rule 30(b)(6)." *Spicer*, at *5.  One such deposed employee, Peterson, responded to specific questions concerning one of the later-designated matters with typical answers of "I don't know," or "I don't recall." *Spicer*, at *6.  These answers are similar to those given by Mr. Scott, discussed later herein, of "No, not that I remember," and "No, I don't recall." The *Spicer* court noted, at *6:

> ... Of course, there is no obligation on a corporate employee such as Peterson, appearing for her deposition as a mere fact witness, to provide information known or readily available to the corporation. That is the point of the 30(b)(6) deposition. While an individual employee has no obligation under the rules of discovery to investigate and testify regarding information known or readily available to a corporate party at a deposition, a Rule 30(b)(6) deponent cannot shirk that obligation.

The sanction portion of the *Spicer* order is well-reasoned, and set forth hereinafter, beginning at *8:

> In short, despite the clear requirements of Rule 30(b)(6), Universal did not come close to meeting its designation to provide a witness who could testify "about information known or reasonably available to the organization." Fed.R.Civ.P. 30(b)(6). Whether by design or oversight, it is clear that Universal completely disregarded its obligations under Rule 30(b)(6). Spicer has been prejudiced in terms of the expenses incurred in preparing for and attending a 30(b)(6) deposition in a distant city that was utterly futile, and in its inability to obtain discoverable information on the company's alleged financial downturn. Sanctions are necessary in this case to deter a corporate party from hiding the

12

ball as to such a critical defense. Given the immediacy of the trial date, requiring the plaintiff to conduct another Rule 30(b)(6) deposition would only serve to punish plaintiff's counsel by requiring them to retrace their steps instead of preparing for the impending trial. As such, the court finds the following sanctions to be appropriate under the Fourth Circuit's *Wilson* standard.

Universal shall pay Spicer's counsel's costs and fees associated in any respect with (1) the preparation and filing of the Rule 30(b)(6) Notice and Amended Notice; (2) any motions filed with the court concerning the scope of the 30(b)(6) Notices; (3) travel to Grand Rapids for the Rule 30(b)(6) deposition; and (4) filing, preparation and argument on the motion for sanctions. Spicer is directed to submit an accounting of such costs and fees within ten (10) days.

Universal's defense that Spicer was terminated for financial reasons related to the Pearisburg facility is stricken as the corporation's 30(b)(6) witness had no information on this topic. Because the corporation provide [sic] no specific financial information at the Rule 30(b)(6) deposition, Spicer was unable to probe this defense. A party simply cannot disregard its obligations under the Federal Rules of Civil Procedure as Universal has in this case and thwart discovery on such a material issue. Given the fact that the trial is imminent and summary judgment briefs have been filed, ordering Universal to redo the 30(b)(6) deposition would only serve to needlessly delay the trial of the case. As such, at this late stage of litigation, no other sanctions are either effective or appropriate.

In response to the foregoing, NCMIC asserts that its conduct is supported by *DHL Express (USA), Inc. v. Express Save Industries, Inc.*, 2009 WL 3418148 (S.D.Fla.)(Seltzer, M.J.). (Ex. 27, p. 2.)  NCMIC should reread *DHL Express*.  This court compelled a Rule 30(b)(6) deposition, and awarded a sanction of attorneys' fees against the non-complying corporation.  DHL took the deposition of John Abdo in his individual capacity for 7 hours. Abdo was the sole owner, president and manager of the closely held Defendant, Express Save Industries ("ESI").  A week after Abdo's deposition, DHL noticed a 30(b)(6) deposition of ESI. ESI responded that "the sole witness it can designate" is Abdo, and he has already been deposed, therefore, it refused to produce a corporate representative.   DHL filed a motion to compel; ESI filed a corresponding motion for protective order.  After discussing the radical

13

difference between the deposition of an individual witness and a corporate representative under Rule 30(b)(6), including other cases from this court similarly holding, such as *Provide Commerce, Inc. v. Preferred Commerce, Inc.,* 2008 WL 360588 (S.D.Fla.), this court ordered that ESI produce Abdo or another corporate representative for a 30(b)(6) deposition, and ordered ESI to pay DHL attorneys' fees.

NCMIC's response pulls a quote out of *DHL Express (USA), Inc. v. Express Save Industries, Inc.*, 2009 WL 3418148 (S.D.Fla.)(Seltzer, M.J.), but fails to acknowledge that the quotation is from a New York case, *A.I.A. Holdings, S.A v. Lehman Brothers, Inc.,* No. 97 Civ. 4978, 2002 U.S. Dist. LEXIS 9218 (S.D.N.Y May 20, 2002), which was championed by ESI, but implicitly rejected by this court—ESI argued that this court should adopt the reasoning of *A.I.A. Holdings* instead of applying this court's earlier decision in *Provide Commerce, Inc. v. Preferred Commerce, Inc.,* 2008 WL 360588 (S.D.Fla.).  This court never adopted *A.I.A. Holdings*, and instead, applied *Provide Commerce, Inc. v. Preferred Commerce, Inc.,* 2008 WL 360588 (S.D.Fla.).

Further, the statement from *A.I.A. Holdings, S.A v. Lehman Brothers, Inc.,* No. 97 Civ. 4978, 2002 U.S. Dist. LEXIS 9218 (S.D.N.Y May 20, 2002) contains a very important condition, one which NCMIC did not fulfill in this case—***assuming the witness is properly prepared.***  *DHL Express (USA), Inc. v. Express Save Industries, Inc.*, at *3.

An examination of the prior testimony designated by NCMIC reveals an absolute failure of NCMIC to provide the discovery required by a Rule 30(b)(6) deposition. First, the designated matters for which **NCMIC failed and refused to produce a knowledgeable, informed, and prepared witness**:

14

**Designated Matter (DM) #1:      What, when, why, where and how any due diligence was performed on Brican America, Inc., prior to July 15, 2005.**

**NCMIC Response:        Scott Transcript 46-47; Cook 93-94**

As to designated matter number 1, NCMIC's president admitted that two of the four pages of deposition testimony cited by NCMIC had nothing to do with the designated matter. (NCMIC Tr. 11[4].) As to the other two pages, two questions were asked of that witness—former NCMIC employee Fred Scott, about limited aspects of due diligence on NCMIC:

> Q.  Prior to signing Ex. 2, the general vendor agreement, did you investigate the length of time that Brican America, Inc., had been in business?
> A.   No, not that I remember.
>
> Q.   Did you investigate the financial status of Brican America, Inc., prior to signing Ex. 2?
> A.   No, I don't recall.

(Scott Tr. 46-47, Ex. 7.)

NCMIC agrees that only two pages of the deposition of former employee Fred Scott, and none of the two pages of the deposition of former employee Todd Cook, relate in any way to designated matter #1.  (NCMIC Tr. 11-12.)  Mr. Scott testified that he spent one hour with the attorneys for NCMIC, and with Greg Cole, preparing for his deposition.  (Scott Tr. 25-26.) During the one hour meeting, he was shown three documents—a general vendor agreement, "a letter that I had written and ... maybe another email."  (Scott Tr. 26.)  None of those three

---

[4]Asking the designated witness—the president of NCMIC—to explain the deposition pages designated by NCMIC as being responsive to the designated matter, and on which NCMIC would rely, consistently brought an objection by NCMIC, with a statement that the witness may answer of his personal knowledge, but the answer "won't be binding on the company pursuant to the 30(b)(6) designation."  (NCMIC Tr. 10.)  Such a position was firmly rejected by Judge Gonzalez in *King v. Pratt & Whitney, a Div. of United Technologies Corp.*, 161 F.R.D. 475 (S.D.Fla. 1995).  The questions can still be asked, and are binding on the corporation, but the corporation does not have the same obligation to prepare the witness as it does for questions within the designated matters.

documents would relate, in any way, to due diligence performed by NCMIC prior to June, 2005.

Unlike Dr. Norton in *Novartis*, Mr. Scott, as a former employee of NCMIC who did not review any documents prior to his deposition which related to any effort to perform due diligence on NCMIC prior to June, 2005, was not prepared to testify in the fashion that Rule 30(b)(6) requires, "[t]he [organization] must prepare  the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006), quoted in *Continental Cas. Co. v. First Financial Employee Leasing, Inc.*, 716 F.Supp.2d 1176, 1189 (M.D.Fla. 2010). Accordingly, it is clear that *Novartis* is inapposite, and NCMIC failed to properly respond to the Rule 30(b)(6) notice of taking deposition.

None of the cases reviewed above supports NCMIC's conduct in this case.  Plaintiffs will discuss the sanctions they seek at the conclusion of reviewing each of the designated matters for which NCMIC failed to properly provide a corporate witness.

In its response, NCMIC asserts "Fred Scott testified that he could not recall doing any due diligence on Brican America, Inc."  (Ex. 27, p. 3.) No such testimony exists[5].

NCMIC appears to concede to a finding by this court that "NCMIC performed no due diligence on Brican America, Inc., before July 15, 2005."  (Ex. 27, p. 3.)

**DM #2:**       **If no due diligence on Brican America, Inc., was performed, why not.**

**NCMIC:**       **Scott Transcript 46-47; Cook 93-94.**

---

[5]This inaccurate statement is consistent with the inaccurate statements made by NCMIC in its opposition to the production of Mr. Cole's personnel file, and should be as disturbing to the court as were those statements.

NCMIC's president admitted that nothing contained within the four pages of NCMIC's response addresses this designated matter.  (NCMIC Tr. 12.)  Accordingly, there has been an abject failure on the part of NCMIC to respond to this designated matter.

In its response, NCMIC asserts "As he testified, Fred Scott would have been responsible for conducting due diligence on Brican America."  (Ex. 27, p. 4.)  Where is that testimony? The phrase "due diligence," in fact, the word "diligence," does not appear anywhere in Fred Scott's deposition.   Is this another inaccurate statement consistent with the inaccurate statements made by NCMIC in its opposition to the production of Mr. Cole's personnel file? If so, it should be as disturbing to the court as were those statements.  If Mr. Scott is the only person "who could testify on this issue," then NCMIC has identified the former employee with whom its designated witness needs to speak to determine why no due diligence was performed by NCMIC on Brican America, Inc., before July 15, 2005.

**DM #3:**     **What, when, why, where and how NCMIC first learned of the identities of the owners of Brican America, Inc.**

**NCMIC:**     **Scott Transcript 46-47; Cook 93-94.**

NCMIC's president insisted that the following testimony addresses the issue of ***when*** NCMIC first learned of the identities of the owners of Brican America, Inc.:

> Q.   Prior to signing Ex. 2, did you investigate the background of the owners of Brican America, Inc.?
> A.   No, I don't recall.
> Q.   And prior to signing Ex. 2, did – were you asked from [sic–by] any of Mr. Stewart, Mr. Artino, and Mr. Cole about the background of the owners of Brican America, Inc.?
> A.   I don't remember.

(Scott Tr. 46-47)

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

Q.   As well as paying a sales call on them saying, you know, like to see -- put your face in front of them?
A.   That's correct.
Q.   Build a relationship with them, that type of thing?
A.   That's correct.

(Cook Tr. 94.)

(NCMIC Tr. 13-15.)

Plaintiffs assert that there is nothing in the above testimony which addresses designated matter #3.   Again, an abject failure on the part of NCMIC to properly provide 30(b)(6) testimony.  Rather than fulfilling its Rule 30(b)(6) obligations, NCMIC wishes to concede that "it does not know what, when, why, where and how NCMIC first learned of the identities of the owners of Brican America, Inc."  (Ex. 27, p. 4.)

**DM #4:**      **What, when, why, where and how any due diligence was performed on the owners of Brican America, Inc.**

**NCMIC:**      **Scott Transcript 46-47; Cook 93-94**

Mr. Cole admitted that nothing responsive to this designated matter is contained in the cited pages of deposition testimony.  (NCMIC Tr. 15.)  Once again, an abject failure on the part of NCMIC to properly provide 30(b)(6) testimony.   Rather than fulfilling its Rule 30(b)(6) obligations, NCMIC wishes to concede that "Scott did not perform due diligence on the owners of Brican America, Inc.,"  (Ex. 27, p. 4.)  That's not the issue, and the concession does not address the designated matter.  The second half of NCMIC's concession should be rephrased to be that "the only due diligence performed by NCMIC on any of the owners of Brican America, Inc., occurred in July, 2008, when Todd Cook received three *Tampa Tribune* articles—he asked Jacques Lemacon, 'Who is Jeff Vincens?' and he read a print-out from a law

firm's website containing one of several decisions of the United States Bankruptcy Court for the Middle District of Florida in the Recomm bankruptcy."

**DM #5:**       **If no due diligence on the owners of Brican America, Inc., was performed, why not.**

**NCMIC:**       **Scott Transcript 46-47; Cook 93-94.**

NCMIC's president admitted that nothing contained within the four pages of NCMIC's response addresses this designated matter.  (NCMIC Tr. 15-16.)  Accordingly, there has been an abject failure on the part of NCMIC to respond to this designated matter.  Rather than fulfilling its Rule 30(b)(6) obligations, NCMIC wishes to concede that "it does not know why no due diligence was performed on the owners of Brican America, Inc."  (Ex. 27, p. 4.)

**DM #6:**       **What, when, why, where and how NCMIC first learned of the identities of the owners of Brican America, LLC.**

**NCMIC:**       **Scott Transcript 46-47; Cook 93-94.**

NCMIC's president admitted that there was nothing in the designated transcript pages which addresses this designated matter.  (NCMIC Tr. 16.)  Again, an abject failure on the part of NCMIC to properly provide 30(b)(6) testimony.  Rather than fulfilling its Rule 30(b)(6) obligations, NCMIC wishes to add facts which were obviously not researched before the 30(b)(6) deposition—that the documents in NCMIC's possession do not indicate when NCMIC first learned of the identities of the owners of Brican America, LLC.  NCMIC wishes to avoid its 30(b)(6) obligations by conceding, without investigating, that "it does not know what, when, why, where and how NCMIC first learned of the identities of the owners of Brican America, LLC."  (Ex. 27, p. 5.)

**DM #7:**       **What, when, why, where and how any due diligence was performed on the**

19

owners of Brican America, LLC.

**NCMIC:       Scott Transcript 46-47; Cook 93-94**

NCMIC's president admitted that nothing responsive to this designated matter is contained in the cited pages of deposition testimony.  (NCMIC Tr. 17.)  Once again, an abject failure on the part of NCMIC to properly provide 30(b)(6) testimony.  Rather than fulfilling its Rule 30(b)(6) obligations, NCMIC wishes to concede that "NCMIC did not perform due diligence on the owners of Brican America, LLC."  (Ex. 27, p. 5.)

**DM #8:       If no due diligence on the owners of Brican America, LLC, was performed, why not.**

**NCMIC:       Scott Transcript 46-47; Cook 93-94.**

NCMIC's president admitted that nothing contained within the four pages of NCMIC's response addresses this designated matter.  (NCMIC Tr. 17-18.)  Accordingly, there has been an abject failure on the part of NCMIC to respond to this designated matter.

NCMIC's president admitted that he did not review any documents in NCMIC's possession relating to due diligence since receiving the notice of taking the Rule 30(b)(6) deposition, and did not speak to any of the former employees who were involved in the Brican America contracting in preparation for the Rule 30(b)(6) deposition.  (NCMIC Tr. 20-22.)

Rather than fulfilling its Rule 30(b)(6) obligations, NCMIC wishes to concede that "NCMIC ... does not know why such due diligence was not performed [on the owners of Brican America, LLC.]"  (Ex. 27, p. 5.)

**DM #9:       What, when, why, where and how NCMIC determined the amount it would loan to each Plaintiff secured by the equipment which was being purchased from Brican America, Inc., or Brican America, LLC.**

20

**NCMIC:       Barkley 85-87, 116-117; Thompson 168-169; Scott 109-110; Cook 108-109; Cole 55-59**

Ms. **Barkley** testified that the vendor set the price. (Barkley 85.) Mr. **Scott** testified that NCMIC did nothing to investigate what the equipment actually cost, but rather, just relied on the customer saying how much he was being billed, and the sales representative stating the price of what he was selling. (Scott 109.) Mr. **Cole** testified that, other than looking at invoices it received from Brican, it did nothing to determine the value of the equipment being financed. (Cole 58.) The combination of this testimony is that the vendor set the price and NCMIC did nothing to determine the value of the equipment being financed.

However, there is so much other extraneous information in the pages cited, Plaintiffs are unable to be certain of the position of NCMIC on this issue. None of the individual deponents prepared for their deposition as though they were being deposed as a 30(b)(6) witness. Because NCMIC refused to properly respond to the Rule 30(b)(6) notice, Plaintiffs believe that it would be appropriate for this court to instruct the trier of fact, and NCMIC now concedes, that, "the vendor set the price and NCMIC did nothing to determine the value of the equipment being financed." (Ex. 27, p. 5.)

**DM #10:       What, when, why, where and how NCMIC learned of the utilization of any marketing or advertising agreements by Brican America, Inc.**

**NCMIC :      Barkley 56-62, 91-93, 95-96, 125; Scott 49-50; Thompson 63-66, 106-107, 177, 205, 221; Cook 99-100, 109-111; Cole 140, 159-160**

Plaintiffs first attempted to gain this information through an interrogatory:

11.    With respect to the Advertising Agreements or Marketing Agreements, please state the following:

         a.    the date you first became aware of the existence of these

21

Agreements;

    b.    the manner in which you first became aware of these Agreements;

    c.    the person(s) who made you aware of these Agreements;

    d.    the document(s) that made you aware of these Agreements.

NCMIC avoided answering the interrogatory, instead providing the following non-responsive information:

> Of the 1672 Leases entered into pursuant to the Agreement, Brican failed to provide PSFS with the corresponding Marketing Agreement for 1655 of them, which PSFS only fully realized during the discovery phase of the lawsuit instituted against Brican, when it received Brican's Rule 26(a) Disclosure Statement and 1672 Marketing Agreements.

> In April 2009, when PSFS began to learn of the scope of the existing Marketing Agreements, and the fact that Brican was essentially the only source of Advertising Payments to all of the medical providers, it stopped funding Leases.

Rather than move to compel a better answer to the interrogatory, Plaintiffs believed that they could gain the information through a Rule 30(b)(6) deposition of NCMIC. NCMIC again has failed to provide an answer. Instead, here is what NCMIC wants to rely on:

**Barkley:**    Somewhere between July 2008 and July 2009. (P. 57)
               Before November, 2008. (P. 61)

**Thompson:**    I don't know the exact dates. (P. 63)

> Early on I [learned of the marketing agreements] from Sally Schmaltz, who was in management over the finance contract associates. She was my supervisor. [Ms. Thompson's personnel file indicates that she was a finance contract associate, and thus supervised by Ms. Schmaltz, between September 24, 2004, and September 13, 2005.] "Q. So that would have been sometime between September 24, 2004, and September 13, 2005?" "A. I don't remember the time. I'm sorry." (P. 65)

> On November 20, 2008, she knew that Todd Cook had one. (Pp. 106-7)

22

> Cole:   Somebody asked Ms. Thompson when she first became aware of them when NCMIC was preparing its answers to interrogatories, and Mr. Cole does not remember "her testimony being any different than November, though."

None of the other designated pages speak to the designated issue.  None of the foregoing witnesses were prepared as a Rule 30(b)(6) witness must be prepared to answer the question.  The designated testimony does not satisfy NCMIC's Rule 30(b)(6) obligation.

When NCMIC was asked, concerning designated matter #11, whether NCMIC ever specifically communicated to Brican that Brican was not authorized to use marketing or advertising agreements, NCMIC (through Mr. Cole) responded, at pages 29 and 30:

> I don't know how we could have told them they were not authorized to use marketing agreements when we had no knowledge of it to speak of.  And then when we gained some knowledge later towards the end of the relationship, only a very limited understanding.

In response, NCMIC was asked to acknowledge that NCMIC became aware of the existence of marketing or advertising agreements at least when NCMIC received a copy of such an agreement.  NCMIC responded, "[W]hat I am trying to determine in my mind is when we received a marketing agreement and if we did who may or may not have acknowledged it." (NCMIC p. 30.)   Proper preparation of a Rule 30(b)(6) witness would have prepared the witness to answer that question.  Clearly, even though many pages of five witnesses, including Mr. Cole, were designated as responding to the designated matter of when and how NCMIC learned of the utilization of marketing or advertising agreements, NCMIC did not know the answer to that question by the time of the Rule 30(b)(6) deposition.

In response to the answer given by Mr. Cole, NCMIC was asked "Who was the first one in NCMIC's knowledge as an employee of NCMIC to have seen a marketing or advertising

23

agreement?"   Counsel for NCMIC would not let the question be answered of NCMIC's knowledge, but only as to the witness' personal knowledge, (NCMIC p. 31) which, we have seen, violates Rule 30(b)(6) as interpreted by this court. *King v. Pratt & Whitney, a Div. of United Technologies Corp.*, 161 F.R.D. 475 (S.D.Fla. 1995).

In final pursuit of an answer before turning to the assistance of this court, NCMIC was asked to confirm that "NCMIC has nothing expressly in its possession and has not produced anything where it expressly told Brican America, Inc., not to utilize marketing agreements." In response, NCMIC stated, "Again, I'm not – I don't know why we would tell an entity do not use something that we were not aware of." (NCMIC pp. 33-34.)  The answer begs an answer to the question in designated matter #10—an answer which NCMIC refuses to provide.

Ms. Barkley testified that when she received a copy of a marketing agreement, she spoke with Jean Thompson and Todd Cook about it, and then placed it in the doctor's file with the original paperwork for that doctor.  (Barkley p. 57-59.)  Mr. Cole did not review the doctors' files, or any other files of NCMIC, to prepare himself for the Rule 30(b)(6) deposition of NCMIC.  (NCMIC 5-8.)  Other papers within the file where the marketing agreement was placed by Ms. Barkley would be dated, and would provide a time-frame within which NCMIC received a copy of the marketing agreement.  The refusal of NCMIC to properly prepare a Rule 30(b)(6) witness precludes Plaintiffs from learning of that date.  As we have seen from the evasive answers given by NCMIC regarding designated matter #11, the knowledge of the date when NCMIC received the marketing agreement is important.

The conduct of NCMIC is inappropriate and should be sanctioned by this court to prevent a repetition.  Further, this court should foreclose the possibility that NCMIC will

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

attempt to locate answers to these questions after the Rule 30(b)(6) deposition has been concluded by entering an order in limine as discussed below.

In its response, NCMIC added facts not previously known to Plaintiffs but available to NCMIC—that Sally Schmaltz left the employ of NCMIC on February 9, 2007. (Ex. 27, fn. 5, pp. 4-5.) From this fact, NCMIC proposes to concede that it first learned of the utilization by Brican of any marketing or advertising agreements before February 9, 2007. (Ex. 27, p. 6.) Had NCMIC complied with its obligations under Rule 30(b)(6), the February, 2007, date might have been a plausible explanation or answer to the designated matter. However, it should not have taken an extensive motion by Plaintiffs after the failure of NCMIC to fulfill its Rule 30(b)(6) obligations to finally get responsive facts from NCMIC—especially when there is now no ability to follow up that proffered information with probative questions. The finding of knowledge between Sept., 2004 and 2005 as suggested above should stand.

**DM #15:**   **What, when, why, where and how NCMIC first received a copy of an advertising or marketing agreement between Brican America, Inc., Brican America, LLC, or Viso Lasik Medspas, on the one part, and any of the Plaintiffs on the other part.**

**NCMIC:**   **Barkley 56-62, 91-93, 95-96, 125; Scott 49-50; Thompson 63-66, 106-107, 177, 205, 221; Cook 99-100, 109-111; Cole 140, 159-160**

As recited above, Plaintiffs first attempted to gain this information through an interrogatory, which was inadequately answered by NCMIC. All of the deficiencies relating to designated matter #10 are repeated in connection with this designated matter. Once again, NCMIC abjectly failed to provide the discovery mandated by the notice of taking the Rule 30(b)(6) deposition.

**DM #16:**   **What, when, why, where and how NCMIC inquired of Brican America, Inc., concerning the copy of the advertising or marketing agreement it first**

25

**received.**

**NCMIC:**       **Cook 53-55, 57, 61-65, 69; Thompson 109-113, 117, 223-225**

Having successfully, for the moment, dodged answering the question of when NCMIC first received an advertising or marketing agreement, who received it, and how it was received, (DM #15 above), NCMIC blatantly fails to provide *any* testimony concerning designated matter #16.   All of the pages cited by NCMIC concern the receipt by NCMIC of an email with the three *Tampa Tribune* newspaper articles, and a cover sheet, warning of a Ponzi scheme.   None concerns the issue designated.   Once again, an abject failure on the part of NCMIC to provide Rule 30(b)(6) discovery.   Based on NCMIC's response to the proposed motion (Ex. 27, p. 6), the court should find as a matter of fact that the only inquiry made by NCMIC to Brican America about advertising agreements was in July, 2008, when Todd Cook wrote a single email to Brican America, which was more than 1 year, and perhaps as long as 3 years, after it first received a copy of a marketing agreement.

**DM #17:**       **What, when, why, where and how were any such inquiries by NCMIC of Brican America, Inc., answered by Brican America, Inc.**

**NCMIC:**       **Cook 53-55, 57, 61-65, 69; Thompson 109-113, 117, 223-225**

As with DM #16, NCMIC abjectly fails to respond with testimony which relates to this designated matter.   NCMIC blatantly fails to provide *any* testimony concerning DM #17.   All of the pages cited by NCMIC concern the receipt by NCMIC of an email with the three *Tampa Tribune* newspaper articles, and a cover sheet, warning of a Ponzi scheme.   None concerns the issue designated.   Based on NCMIC's response to the proposed motion (Ex. 27, p. 6), the court should find as a matter of fact that the only response from Brican America to NCMIC's singular

26

email inquiry to Brican America regarding advertising agreements first received by NCMIC

was in July, 2008, when Todd Cook received a single email response from Brican America,

which inquiry and response were more than 1 year, and perhaps as long as 3 years, after it first

received a copy of a marketing agreement.  (ND_100714 to ND_100715.)

**DM #19:**     **What, when, why, where and how NCMIC performed any due diligence on Brican America, Inc., and its relationship to Recomm.**

**NCMIC:**     **Cook 53-55, 57, 61-65, 69; Thompson 109-113, 117, 223-225**

As is typical of NCMIC's designations, these designations do not answer the question.

Mr. Cook, who was not being deposed as a Rule 30(b)(6) designee, testified at 57 and 58:

> Q.   Well, do you know all that you did to determine whether or not another scam was being perpetrated identical to what was done at Recomm and what was done to Royal Links[6]?
>          MR. GALLAGHER:  Objection.  You can answer.
> A.   I did research I thought was pertinent at the time.
> Q.   What research did you do?
> A.   I would have contacted Brican first, and depending on the answers I got there, I would have went further.

Mr. Cook never testified what he did based on the answers he received, and his answers

were all couched in what he would have done, not what he did.  The only other thing that Mr.

Cook testified to which remotely addresses the issue is that he received "a legal documentation

with regards to the lawsuit of Mr. Vincens," (Cook p. 65) which the undersigned understands

to refer to a printout from the website of a law firm, Berg & Duffy, of a decision by the

U.S.B.C. for the Middle District of Florida in *In re Optical Technologies, Inc.*, and specifically

the order of December 23, 1997, granting Jean Francois Vincens' motion for summary

judgment in an adversary proceeding arising out of that bankruptcy case.  A copy of the order

---

[6]Note that this question is not the same as the designated matter.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

from the website is attached hereto as Ex. 14.

NCMIC offers no additional information on this issue.  (Ex. 27, p. 7.)

The designated portions of Jean Thompson's deposition do not address this designated matter, and she was not prepared as a Rule 30(b)(6) witnesses must be prepared.  NCMIC has failed to present a prepared, designated witness to address this designated matter.  Sanctions should be entered against it.

**DM #20:**    **What, when, why, where and how NCMIC performed any due diligence on the owners of Brican America, Inc., and their relationship to Recomm.**

**NCMIC:**    **Cook 53-55, 57, 61-65, 69; Thompson 109-113, 117, 223-225**

This response to the designations made by Plaintiffs has the same failures as those regarding designated matter #20.  Sanctions are warranted.

**DM #21:**    **What, when, why, where and how NCMIC took any action to make certain that the fraudulent activities reported about Recomm were not duplicated in the business of Brican America, Inc.**

**NCMIC:**    **Cook 53-55, 57, 61-65, 69; Thompson 109-113, 117, 223-225**

The designated portions of prior witnesses' depositions do not address this designated matter whatsoever.  Once again, sanctions are warranted.

**DM #22:**    **What, when, why, where and how NCMIC authorized Todd Cook to suggest to Brican America, LLC, changes in the language of the marketing agreement used by Brican America, LLC, to sell Exhibeo Systems to Plaintiffs.**

**NCMIC:**    **Cook 114-117, 124-125, 128-129, 131-132, 138-139**

Not one single word of any of the pages cited by NCMIC concerns the authorization of Todd Cook to suggest to Brican America, LLC, changes in the language of the marketing agreement.  Apparently, NCMIC believes itself to be beyond the realm of those litigants who

are governed by the Federal Rules of Civil Procedure.  That is a radical position which requires redressing in a radical fashion so that NCMIC learns that it in all future phases of this litigation and all future litigation it must comply with this court's rules.  NCMIC's pleadings should be struck.

**DM #26:**    **Why and how was this response[7] different than NCMIC's response to the information about the business of Recomm (owned by the same people as Brican America, LLC,) provided to NCMIC by Harold Meredith in July, 2008.**

**NCMIC:**    **Cook 53-55, 57, 61-65, 69; Thompson 109-113, 117, 223-225**

Once again, not one single word of any of the pages cited by NCMIC concerns why the response to the information from James Adams was different than the response of NCMIC to the information provided to NCMIC by Herald Meredith in July, 2008.   NCMIC's pleadings should be struck.

The foregoing addresses the designated matters on which NCMIC refused to provide a witness.  For those designated matters for which NCMIC produced a witness, **NCMIC failed to properly prepare the witness** to enable the witness to respond to the designated matters, as seen below:

**DM #11:**    **What, when, why, where and how NCMIC gave authorization to Brican America, Inc., to utilize marketing or advertising agreements.**

Mr. Cole was asked what he reviewed to prepare himself to answer questions concerning this designated matter, and he responded that he reviewed "[a]ll of the deposition testimony I had mentioned before, as well as the Brican strategic alliance information."  (NCMIC Tr. 26.)

---

[7]DM #25 was: What, when, why, where and how NCMIC responded to the information about the business of Brican America, LLC, it received from James Adams.

29

The Brican strategic alliance information did not come into existence until long after the date on which Brican America claims it was authorized to utilize marketing and advertising agreements; thus, it would be of no benefit in answering questions concerning this designated matter.  The deposition testimony that Mr. Cole "had mentioned before" was that of Todd Cook, Paula Nuzum Barkley, Jean Thompson and Fred Scott.  (NCMIC Tr. 7.)  As we will see, simply reading the transcripts of four depositions of former employees who were not prepared as a Rule 30(b)(6) deponent must be prepared is insufficient to prepare the designated witness to testify about this designated matter.  In short, he cannot use the prior witnesses lack of preparation as a shield to defend his lack of adequate preparation for the Rule 30(b)(6) deposition.

Jean Francois **Vincens** testified that NCMIC authorized Brican America to utilize marketing or advertising agreements.  (Ex. 23: Vincens pp. 149-154, hereafter "Vincens pp. #.")  Mr. **Scott** testified that he does not remember a conversation with either Ray Briscoe or Mr. Vincens about the utilization of marketing or advertising agreements, but admits that an email which Mr. Scott wrote suggests that there was such a conversation.  (Scott pp. 38-39, 45, 53 and 55.)  Mr. Scott's boss, William Artino, testified that the email which Mr. Scott wrote, first addressed to Mr. Briscoe and Mr. Vincens, but sent to Mr. Artino for his assistance, has the impression that Mr. Scott was seeking Mr. Artino's authorization to send the email to Mr. Briscoe and Mr. Vincens.  Further, the email ultimately sent by Mr. Scott to Mr. Briscoe and Mr. Vincens with a letter indicates to Mr. Artino that Mr. Artino gave Mr. Scott authority to

30

send the email and letter.  (Ex. 24: Artino pp. 154-55[8], hereafter "Artino pp. #.")

Mr. Scott testified that he did not know if he kept handwritten notes of his telephone conversations while working at NCMIC, and did not know what his habit was about keeping handwritten notes of telephone conversations while working at NCMIC.  (Scott pp. 60-61.) Eventually, he testified that it was likely that he did, but he does not recall.  (Scott p. 61.) Those handwritten notes should have been reviewed by the Rule 30(b)(6) deponent to determine if Mr. Artino gave Mr. Cook express authorization to send the letter setting forth NCMIC's program for support of Brican America's return policy in the event a doctor canceled a lease agreement.  The handwritten notes should have been produced by NCMIC in response to the request to produce of January 20, 2012.  They were not.

Lanette **Henningsen**, another former employee of NCMIC and the business development manager assigned to the Brican America relationship after Mr. Scott's departure, testified that she maintained physical control of a paper file on Brican America, which file had between 1,000 and 1,500 pages in it.  Among those pages were handwritten notes.  (Ex. 18: Henningsen pp. 25-26[9], hereafter "Henningsen pp. #.")

Of the over 111,000 pages of documents produced by NCMIC in this matter, there is not one handwritten note.  Accordingly, Plaintiffs are able to establish that NCMIC failed to

---

[8]While the Artino deposition occurred after the NCMIC Rule 30(b)(6) deposition, the facts would have been known to Artino before the Rule 30(b)(6) deposition.  NCMIC had a duty to interview its former employees to prepare for the 30(b)(6) deposition.

[9]Like the Artino deposition, the Henningsen deposition occurred after the NCMIC Rule 30(b)(6) deposition; however, the facts were known to Henningsen before the Rule 30(b)(6) deposition.  NCMIC had a duty to interview its former employees to prepare for the 30(b)(6) deposition.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

produce the documents which are required of it to be produced.  NCMIC has subsequently stated that no such paper file exists.  That issue is the subject of a separately filed motion for sanctions.

More importantly, with the foregoing established, Rule 30(b)(6) required NCMIC to do more than having its designated witness read four transcripts of depositions.  NCMIC should have interviewed its former employees who were in a position to authorize Brican America to utilize marketing or advertising agreements.  NCMIC should have conducted a search for any and all telephone notes made by Mr. Scott while he was an employee of NCMIC.  NCMIC should have reviewed the paper file which Lanette Henningsen maintained and left behind at the time of her firing.

Clearly, rather than to properly prepare its designated witness for the deposition, NCMIC simply wanted to advance its defensive position regardless of what the facts would have revealed if NCMIC had bothered to look.  That is not a proper purpose of a Rule 30(b)(6) deposition.

NCMIC responded to this issue with an assertion far beyond the bounds of the stipulated facts claimed by NCMIC to support its assertion—NCMIC asserts that "[W]hen asked about the use of advertising or marketing agreements by Todd Cook [sic], Jacques Lemacon, in July, 2008, ***lied and said only some were in use***, when in fact Brican had signed advertising or marketing agreements with each of the lessees.  ***This is a fact that has been stipulated to by the parties.***  (DE 224, ¶ 104)(emphasis added).  The stipulation simply reads, "Brican America, Inc., answered that only 'some' existed."

NCMIC has failed to comply with its Rule 30(b)(6) obligation, and should be sanctioned

for that failure.

**DM #12:**   **What, when, why, where and how NCMIC formulated what was described by NCMIC's employee, Fred Scott, as NCMIC's "program" "support[ing] Brican America's return policy" "[i]f the Lease Agreement is terminated by the customer due to Brican's return policy."**

The only preparation of the designated witness was the reading of the four deposition transcripts and the NCMIC program supporting Brican America's return policy.  (NCMIC p. 36.)  NCMIC interviewed no employees or former employees to prepare this witness to respond to this designated matter.

**DM #13:**   **What, when, why, where and how NCMIC understood Brican America's "return policy" to be as of June 19, 2006.**

The only preparation of the designated witness was the reading of the four deposition transcripts and the NCMIC program supporting Brican America's return policy.  (NCMIC p. 36.)  NCMIC interviewed no employees or former employees to prepare this witness to respond to this designated matter.  Employee Jo Lynn Quick, who was involved in the collections aspect of the Brican America contracts, authored an email on November 20, 2008, addressed to Lanette Henningsen and Jean Thompson, which asked:

> Do either of you have a copy of the agreement between Brican and the doctor. It would address ***return policy***, reimbursement, etc.? [sic] The doctors refer to this quite often and it would be nice to have a copy for reference.

(Henningsen Depo. Ex. 5.)(Emphasis added.)

Obviously, by November 20, 2008, NCMIC knew that a return policy of Brican's existed, and that it was contained in an agreement between Brican and the doctor.  A copy of the agreement containing the return policy was in the possession of NCMIC by the date of the email, as is disclosed in the email—"Todd [Cook] has one."  (Henningsen Depo. Ex. 5.)

33

Rather than search its records to properly prepare for the Rule 30(b)(6) deposition, the designated witness (the president of NCMIC) chose to use the deposition to advance NCMIC's trial tactics rather than to provide facts. Mr. Cole testified on behalf of NCMIC that he "found no evidence that there was ever a return policy." (NCMIC p. 39.) When Mr. Cole was directed to the marketing agreement, that is, the agreement between Brican and the doctor to which Ms. Quick referred, Mr. Cole stated that the cancellation provision was "[a]bsolutely not" a return policy. (NCMIC p. 40.) However, Ms. Quick referred to the return policy by name, and knew it was contained in the agreement between the doctor and Brican America. Mr. Vincens testified that the return policy was the cancellation agreement contained in the marketing and advertising agreements. In preparing, or refusing to prepare, its witness for the Rule 30(b)(6) deposition, NCMIC failed to interview its present employees such as Ms. Quick who referred to the policy by name.

**DM #14:**    **What, when, why, where and how NCMIC authorized Fred Scott to commit NCMIC to NCMIC's "program" "support[ing] Brican America's return policy" "[i]f the Lease Agreement is terminated by the customer due to Brican's return policy."**

As discussed during the deposition, DM #14 contains some overlapping with DM #11. The deficiencies in the witness' preparation to answer questions relating to DM #14 are the same deficiencies noted in DM #11. The witness simply did not prepare. NCMIC testified that Mr. Cole "found no evidence that Bill Artino ever responded to Fred," yet, he never asked Bill Artino. (NCMIC pp. 41, 30.) NCMIC failed to fulfill its Rule 30(b)(6) obligation, and should be sanctioned for that failure.

**DM #27:**    **All knowledge concerning what Brican salespeople were representing concerning the NCMIC lease agreement.**

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Again, because of the intentionally inadequate preparation of the witness, Plaintiffs have been denied their right to discovery. On July 23, 2008, NCMIC received a 30-page PowerPoint® presentation which was understood by Mr. Cook to be presented to customers. (Cook pp. 63-64; Cook Depo. Ex. 37.)  Page 27 of Cook Depo. Ex. 37, states, "1. A FREE MARKETING TOOL. ...   WE WILL PAY YOU ENOUGH PER YEAR TO OFFSET THE COST OF YOUR LEASE!"   While Mr. Cole acknowledged having possession of the PowerPoint® presentation, he had not reviewed it in preparation for the Rule 30(b)(6) deposition.  (NCMIC p. 56.)  When Mr. Cole was asked why he did not review the 30-page PowerPoint® presentation in preparation for the Rule 30(b)(6) deposition, he responded:

> I have reviewed it before.  I can't tell you whether it was a month ago or six months ago.  I know that there is nothing in it regarding NCMIC or PSFS.  I know there's reference to making sure that the customer understands that they have to make a payment to the finance company.

(NCMIC p. 58.)

As noted above, the designated matter was not whether the salespeople mentioned NCMIC or PSFS, but rather, what knowledge NCMIC had concerning what Brican salespeople were representing concerning the NCMIC lease agreement.   Plaintiffs assert that a representation that Brican America would pay enough money per year to offset the cost of the lease is a representation concerning the lease agreement.  Further, there is nothing whatsoever in the 30-page PowerPoint® presentation "making sure that the customer understands that they have to make a payment to the finance company."  The witness would have known that if the witness had been properly prepared.

In addition, while an employee of NCMIC, Jean Thompson wrote an email to Brican

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

America in October, 2006, where she recommended to one of the owners of Brican America what should be said to customers concerning corporate leases.  (ND_101010.)  The witness made no effort to locate email from NCMIC employees to Brican America to be properly and adequately prepared to respond to this designated matter.  As a result, he was unfamiliar with the email and was not in a position to testify as to whether the recommendation made by NCMIC had been put into action by Brican America.  (NCMIC p. 50-54.)

In its response, NCMIC tried to broaden this designated matter, then claim impossibility of any response, in an effort to avoid its Rule 30(b)(6) obligation.  NCMIC responded, "There is no way that NCMIC could possibly have either personal or institutional knowledge about what *each* of Brican's salespeople were representing to the individual lessees concerning the NCMIC lease agreement."  (Ex. 27, p. 9.)  The designated matter seeks only what NCMIC *did know*—therefore, if it knew of only one statement made by salespeople, a proper response would disclose that one statement.

NCMIC also wants to justify its refusal to fulfill its Rule 30(b)(6) obligation by hiding behind its repeated mantra of this being a "paper case."  It is a paper case, as described by the undersigned, in the sense that the fraud is contained in the papers; however, NCMIC's knowledge that the papers contained fraud is very relevant to the issue of NCMIC's culpability.

**DM #28:    All knowledge concerning what Brican salespeople were representing concerning the Brican lease agreement subsequently assigned to NCMIC.**

As with DM #27, the designated witness was unprepared to testify to this issue.  The witness had nothing regarding DM #28 different from his responses to DM #27.  (NCMIC p. 59.) NCMIC has failed to adequately prepare its witness, which, as we have seen, is equivalent

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

to refusing to produce a witness.  Further, NCMIC's response to the proposed motion contains the same artful dodger device as its response to #27—avoid answering the actual designated matter, and make up one of your own.

NCMIC should be sanctioned for that conduct.

## Sanctions Include an Order *in Limine*

Based on the foregoing, Plaintiffs seek an order from this court, *in limine,* which provides that the following facts are established by NCMIC's response to the Rule 30(b)(6) deposition notice, and neither NCMIC nor PSFS 3 may attempt to introduce evidence which contradicts the following established facts:

**DM #1 and #2:**

NCMIC performed no due diligence on Brican America, Inc., prior to July 15, 2005, and has failed to explain why such due diligence was not performed by it.

**DM #3, #4 and #5:**

NCMIC and PSFS 3 have failed to disclose when and how they first learned of the identities of the owners of Brican America, Inc.  Further, NCMIC performed no due diligence on the owners of Brican America, Inc., and has failed to explain why such due diligence was not performed by it.

**DM #6, #7 and #8:**

NCMIC and PSFS 3 have failed to disclose when and how they first learned of the identities of the owners of Brican America, LLC.  Further, NCMIC performed no due diligence on the owners of Brican America, LLC, and has failed to explain why such due diligence was not performed by it.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

**DM #9:**

The vendor set the price and NCMIC did nothing to determine the value of the equipment being financed.

**DM #10:**

NCMIC first learned of the utilization of marketing or advertising agreements by Brican America, Inc., between September, 2004, and September, 2005.

**DM #11:**

Brican America, Inc., through one of its principals, Jean Francois Vincens, testified that Brican America, Inc., was given authority by NCMIC to utilize marketing or advertising agreements in late May to early June, 2006, and NCMIC has presented no evidence to contradict this testimony.  Further, NCMIC has presented to no testimony that it ever advised Brican America, Inc., that Brican America, Inc., was not authorized to utilize marketing or advertising agreements.

**DM #12:**

NCMIC has failed to disclose what, when, why, where and how NCMIC formulated what was described by NCMIC's employee, Fred Scott, as NCMIC's "program" "support[ing] Brican America's return policy" "[i]f the Lease Agreement is terminated by the customer due to Brican's return policy."  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**DM #13:**

NCMIC failed to disclose what, when, why, where and how NCMIC understood Brican America's "return policy" to be as of June 19, 2006.  Therefore, the trier of fact is authorized

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs. Further, by November 20, 2008, NCMIC understood that the return policy of Brican America was contained in the agreement between Brican America and each doctor.

**DM #14:**

NCMIC failed to disclose what, when, why, where and how NCMIC authorized Fred Scott to commit NCMIC to NCMIC's "program" "support[ing] Brican America's return policy" "[i]f the Lease Agreement is terminated by the customer due to Brican's return policy." Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs. Further, Fred Scott's supervisor while both were employed by NCMIC, Bill Artino, testified that "the intimation [of the email from Fred Scott to Bill Artino seeking assistance, followed by email from Fred Scott to Brican America] is that we discussed it and [I] said, 'Okay. Go ahead and do this.'"

**DM #15:**

NCMIC failed to disclose what, when, why, where and how NCMIC first received a copy of an advertising or marketing agreement between Brican America, Inc., Brican America, LLC, or Viso Lasik Medspas, on the one part, and any of the Plaintiffs on the other part. Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**DM #16 and #17:**

NCMIC failed to disclose what, when, why, where and how NCMIC inquired of Brican America, Inc., concerning the copy of the advertising or marketing agreement it first received, and has failed to disclose what, when, why, where and how were any such inquiries by NCMIC

39

of Brican America, Inc., answered by Brican America, Inc.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on these issues against NCMIC and in favor of Plaintiffs.

**DM #19 and #20:**

NCMIC failed to disclose what, when, why, where and how NCMIC performed any due diligence on Brican America, Inc., and its relationship to Recomm, and failed to disclose what, when, why, where and how NCMIC performed any due diligence on the owners of Brican America, Inc., and their relationship to Recomm.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on these issues against NCMIC and in favor of Plaintiffs.

**DM #21:**

NCMIC failed to disclose what, when, why, where and how NCMIC took any action to make certain that the fraudulent activities reported about Recomm were not duplicated in the business of Brican America, Inc.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**DM #22:**

NCMIC failed to disclose what, when, why, where and how NCMIC authorized Todd Cook to suggest to Brican America, LLC, changes in the language of the marketing agreement used by Brican America, LLC, to sell Exhibeo Systems to Plaintiffs.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**DM #26:**

40

NCMIC failed to disclose why and how was this response different than NCMIC's response to the information about the business of Recomm (owned by the same people as Brican America, LLC,) provided to NCMIC by Harold Meredith in July, 2008. Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**DM #27 and #28:**

NCMIC failed to disclose all of its knowledge concerning what Brican salespeople were representing concerning the NCMIC lease agreement, and failed to disclose all of its knowledge concerning what Brican salespeople were representing concerning the Brican lease agreement subsequently assigned to NCMIC. Therefore, the trier of fact is authorized to construe whatever evidence is admitted on these issues against NCMIC and in favor of Plaintiffs.

# Certification of Counsel

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues and has been unable to resolve the issues as discussed in this motion.

Dated:      March 27, 2012
            Hollywood, FL

Respectfully submitted,

*Ronald P. Gossett*

Ronald P. Gossett (210811)
rongossett@gossettlaw.com
Gossett & Gossett, P.A.
4700 Sheridan St., Building I
Hollywood, FL  33021
(954) 983-2828 • (954) 212-0439 Fax

41

Attorneys for *Blauzvern* Plaintiffs

## Certificate of Service

I HEREBY CERTIFY that on March 27, 2012, I electronically filed the foregoing document with the Clerk of this Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

David H. Charlip (329932)
Charlip Law Group, LLC
17501 Biscayne Blvd., Suite 510
Aventura, Florida 33160
(305) 354-9313 • (305) 354-9314 Facsimile
dcharlip@charliplawgroup.com
Attorneys for *Wigdor* Plaintiffs

Kenneth J. Catanzarite (California Atty)
Catanzarite Law Corporation
2332 W Lincoln Avenue
Anaheim, CA 92801
(714) 520-5544 • (714) 520-0680 Fax
kcatanzarite@catanzarite.com
Attorney for *Patel* Plaintiffs

Catherine Rodriguez
Levey, Filler, Rodriguez, Kelso & Magilligan, LLP
1688 Meridian Avenue, Suite 900
Miami Beach, FL 33139
(305) 672-5007 • (305) 672-0470 Fax
cmrodriguez@leveyfiller.com

and

Michael F. Gallagher (PHV App.)
Michael I. Verde (PHV App.)
Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, New York 10022
(212) 940-8800 • (212) 940-8776 Fax
michael.verde@kattenlaw.com
michael.gallagher@kattenlaw.com

and

Edward N. McConnell (PHV App.)
5428 Boulder Drive
West Des Moines, Iowa 50266
(515) 255-8680 • (515) 255-8681 Fax
ed@gmlawfirm.com

and

Ryan J. Larsen
Katten Muchin Rosenman LLP
2029 Century Park East, Ste. 2600
Los Angeles, CA 90067-3012
(310) 788-4544 • (310) 712-8223
ryan.larsen@kattenlaw.com

Attorneys for *NCMIC Finance Corporation and PSFS 3 Corporation*

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Alan S. Fine
Alan S. Fine, P.A.
255 Aragon Avenue, 2nd Floor
Coral Gables, Florida 33134
(305) 424-2400 • (305) 424-2401 Fax
afine@fine-law.com
Attorneys for *Brican Group of Defendants*

Jeff Tomberg
Jeff Tomberg, JD, PA
626 SE 4th Street
Boynton Beach, Florida 33435
(561) 737-1345 • (561) 734-8971 Fax
piatty@yahoo.com
Attorney for *DeCanio Group of Defendants*

Robert S. Green
Green Welling PC
595 Market Street
Suite 2750
San Francisco, CA 94105
Attorney for Third Party Defendant

Joshua M. Entin
Robert L. Switkes
Rosen Switkes & Entin
407 Lincoln Road
Penthouse S.E.
Miami Beach, FL 33140
Attorney for Third Party Defendant

Rowan Keenan
Keenan, Ciccitto & Associates
376 E. Main Street
Collegeville, PA 19426
Attorney for Third Party Defendant

Robert Alan Selig
Boone & Davis PA
2311 North Andrews Avenue
Wilton Manors, FL 33311
Attorney for Third Party Defendant

**Gossett & Gossett, P.A.**
Lead Attorney for Plaintiffs
4700 Sheridan St., Building I
Hollywood, FL  33021
(954) 983-2828 • (954) 212-0439 Fax
rongossett@gossettlaw.com
Fla. Bar No. 210811

By:/s/ *Ronald P. Gossett*

Ronald P. Gossett
For the Firm

D:\Clients\Brican America\Pleadings MDL\Plaintiffs Motions\Sanctions\2012 03 27 Plaintiffs' Motion for Sanctions Against NCMIC Finance Corp Rule 30b6 Depo and Embedded Memorandum of Law.wpd