UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-md-02183-SEITZ/SIMONTON

IN RE: Brican America LLC
Equipment Lease Litigation,
_____/

ORDER RE:
PLAINTIFFS' MOTION FOR SANCTIONS INCLUDING
STRIKING PLEADINGS AGAINST NCMIC FINANCE CORP.,
RELATED TO NCMIC'S FAILURE TO PRODUCE
30(b)(6) CORPORATE REPRESENTATIVE FOR DEPOSITION

This matter is before the Court upon Plaintiffs' Motion for Sanctions (DE # 284)

related to Defendant NCMIC's purported failure to produce a NCMIC corporate

representative for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).

Defendant NCMIC has filed a Response to the Motion, and the Plaintiffs have filed a

Reply (DE ## 304, 306).  All motions for sanctions have been referred to the undersigned

by the Honorable Patricia A. Seitz, the District Judge assigned to the case (DE # 44).  For

the following reasons, the undersigned recommends that the Plaintiffs' Motion for

Sanctions be granted, in part.

I.        BACKGROUND

This multi-district litigation involves claims by various dentists and optometrists

("Plaintiffs") against several entities related to the purchase and financing of equipment,

comprised of a flat screen television, computer and software, ("Display System") used in

the Plaintiffs' offices to display advertising to their patients.  Plaintiffs purchased the

Display System from Defendants Brican America, LLC; Brican America, Inc.; or Brican,

Inc., ("Brican") and financed the purchases through an installment sales or loan

agreement ("Financing Agreement").[1]  Plaintiffs contend that Brican represented that the Plaintiffs could purchase the Display System for effectively no cost, through the use of a simultaneously-executed marketing agreement which provided for a company related to the Brican entities to pay a sum of money for advertising services on the Display Systems.  The sums paid under that marketing agreement would be used to offset the monthly lease payments due from Plaintiffs under the Financing Agreement.  The Financing Agreements all included non-cancellation clauses which, in essence, stated that the purchaser/customer of the equipment would be responsible for all payments due under the lease under all circumstances.  The Marketing Agreements, however, which were executed between Brican and the purchasers of the Display Systems, promised that Brican Inc. or Brican, LLC would purchase a portion of advertising space on the Plaintiffs' Display Systems and, as part of Brican's Return Policy/Guarantee would permit the Purchaser Plaintiffs to request that Brican repurchase the equipment from the Plaintiffs, if Brican failed to honor its promise to purchase advertising space pursuant to the Marketing Agreement.[2]

In July of 2005, Brican entered into a Vendor Agreement with Defendant NCMIC Finance Corporation, doing business as Professional Solutions Financial Services,

---

[1] The background summary is taken from the Court's August 1, 2013, Omnibus Order on Cross-Motion for Summary Judgment on the "Jugular" Issue (DE # 413), is only set forth to provide context for the instant Motion for Sanctions, and does not constitute findings of fact by the undersigned.

[2] There are a number of different versions of the Financing Agreements and Marketing Agreements that are discussed in length in the August 1, 2013, Omnibus Order on Cross-Motion for Summary Judgment on the "Jugular" Issue (DE # 413).  The variances in those Agreements are not relevant for resolution of the instant Motion for Sanctions.

("NCMIC" and "PSFS") whereby NCMIC became the lessor under the various Financing Agreements that Plaintiffs had entered into for the purchase of the Display System, in exchange for NCMIC making a lump sum payment of approximately $22,000 to Brican for each Financing Agreement.  The Vendor Agreement was signed by Fred Scott, NCMIC's former Business Development Manager.

According to Gregory Cole, NCMIC's president, around Mid-April of 2009, he received a message from a Brican salesman indicating that there was a problem with the vendor relationship with Brican, including the fact that unbeknownst to NCMIC, Brican had entered into Marketing Agreements with virtually all of Brican's customers. As a result of this information, on April 15, 2009, NCMIC stopped funding the Brican leases. At a subsequent meeting between Brican and NCMIC, NCMIC was informed that: (1) Brican had used the Marketing Agreements in connection with all sales financed by NCMIC; and, (2) Brican was funding one of its related entities to cover the advertising payments due from that entity to the Plaintiffs under the executed Marketing Agreements.

In an effort to discover, among other things, whether NCMIC was involved in, or had knowledge of the manner in which Brican created and presented its Return Policy and/or Marketing Agreements to the Plaintiffs prior to the time that NCMIC stopped financing the Brican leases, the Plaintiffs sought to depose a NCMIC corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). The Plaintiffs contend that NCMIC failed to produce an appropriate witness at the 30(b)(6) deposition, and seek sanctions related to that failure.

## II.    THE POSITIONS OF THE PARTIES

In the Motion for Sanctions, the Plaintiffs contend that NCMIC failed to produce an

3

adequate corporate representative deponent on various topics, after the Plaintiffs issued a Notice of Taking Videotaped Deposition of NCMIC Finance Corp. pursuant to Fed. R. Civ. P. 30(b)(6).  The Notice identified thirty-two separate "Matters for Examination" which primarily related to obtaining information about the relationship between NCMIC and the Brican entities and the details of when NCMIC became aware of certain marketing agreements and advertising agreements between Brican and its customers (DE # 284-1).[3]  The Plaintiffs contend that NCMIC improperly refused to provide a 30(b)(6) witness as to certain of those topics and instead merely pointed the Plaintiffs to certain deposition testimony of NCMIC's former and current employees in their individual capacities.  In so doing, NCMIC contended that the prior testimony provided responses to the Plaintiffs' inquires and thus asserted that NCMIC could rely on such testimony to represent NCMIC's responses to certain topics identified in the Notice.[4]  NCMIC thus contended that the designation of the witnesses' prior testimony obviated the need for an additional deposition by a NCMIC 30(b)(6) witness on those same issues.  Therefore, NCMIC only produced Greg Cole, President of NCMIC, to testify as NCMIC's 30(b)(6) corporate representative as to those topics to which NCMIC asserted that no prior

---

[3]  The Plaintiffs also requested through a Schedule of Documents to be Produced that NCMIC produce every document reviewed by the designated witness in preparation for the deposition (DE # 284-1 at 7).

[4]  The designated topics for which NCMIC refused to produce a 30(b)(6) deponent are Plaintiffs' Designated Matters Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 15, 16, 17, 19, 20, 21, 22 as set forth in the Amended Notice of Taking Videotaped Deposition of NCMIC Finance Corp. Pursuant to Fed. R. Civ. P. 30(b)(6) (DE # 284-1).  The topics are summarized below in the Analysis section of this Report.

deposition testimony had been given.[5]  The Plaintiffs contend that such a method of designating prior testimony in lieu of producing a proper 30(b)(6) witness is improper. In addition, Plaintiffs contend that many, if not all, of the NCMIC designations of prior witness testimony failed to provide sufficient responses to the Plaintiffs' specific areas of inquiry, and failed to sufficiently provide NCMIC's, as a corporation, responses and/or knowledge as to those areas.  Further, the Plaintiffs contend that, as to those topics that NCMIC produced Mr. Cole to testify as a corporate representative, Mr. Cole was not adequately prepared.

The Plaintiffs request that NCMIC be sanctioned for its failure to provide an adequate 30(b)(6) deponent in the form of granting the Plaintiffs a beneficial inference for each designated matter for which NCMIC failed to produce an informed witness (DE # 284 at 3, 37-41).[6]  In addition, the Plaintiffs request that additional sanctions in the form

---

[5] NCMIC made Greg Cole available for a 30(b)(6) deposition as to Plaintiffs' Designated Matters Nos. 11, 12, 13, 14, 27 and 28.

[6] The specific "beneficial" inferences requested by the Plaintiffs as to those areas that Plaintiffs contend NCMIC has failed to produce an adequate 30(b)(6) deponent are set forth in the Plaintiffs' Motion (DE # 284 at 37- 41), as follows:

 Designated Matters Nos. 1 & 2: NCMIC performed no due diligence on Brican America, Inc., prior to July 15, 2005, and has failed to explain why such due diligence was not performed by it.

Designated Matters Nos. 3, 4 & 5: NCMIC and PSFS 3 have failed to disclose when and how they first learned of the identities of the owners of  Brican America, Inc.  Further, NCMIC Performed no due diligence on the owners of Brican America, Inc., and has failed to explain why such due diligence was not performed by it.

Designated Matters Nos. 6, 7 & 8: NCMIC and PSFS 3 have failed to disclose when and how they first learned of the identities of the owners of Brican America, LLC.  Further, NCMIC performed no due diligence on the owners of Brican America, LLC, and has failed to explain why such due diligence was not performed by it.

---

**Designated Matter No. 9:** The vendor set the price and NCMIC did nothing to determine the value of the equipment being financed.

**Designated Matter No. 10:** NCMIC first learned of the utilization of the marketing or advertising agreements by Brican America, Inc., between September, 2004 and September, 2005.

**Designated Matter No. 11:** Brican America, Inc., through one of its principals, Jean Francois Vincens, testified that Brican America, Inc., was given authority by NCMIC to utilize marketing or advertising agreements in late May to early June, 2006, and NCMIC has presented no evidence to contradict this testimony.  Further, NCMIC has presented no testimony that it ever advised Brican America, Inc., that Brican America, Inc., was not authorized to utilize marketing or advertising agreements.

**Designated Matter No. 12:** NCMIC has failed to disclose what, when, why, where and how NCMIC formulated what was descibted by NCMIC's employee, Fred Scott, as NCMIC's "program" "support[ing] Brican America's return policy" "[i]f the Lease Agreement is terminated by the customer due to Brican's return policy." Therfore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**Designated Matter No. 13:** NCMIC failed to disclose what, when, why, where and how NCMIC understood Brican America's "return policy" to be as of June 19, 2006.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.  Further, by November 20, 2008, NCMIC understood that the return policy of Brican America was contained in the agreement between Brican America and each doctor.

**Designated Matter No. 14:** NCMIC failed to disclose what, when, why, where and how NCMIC authorized Fred Scott to commit NCMIC to NCMIC's "program" "support[ing] Brican America's return policy" "[i]f the Lease Agreement is terminated by the customer due to Brican's return policy."   Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.  Further, Fred Scott's supervisor while both were employed by NCMIC, Bill Artino, testified that the "intimation [of email from Fred Scott to Bill Artino seeking assistance, followed by email from Fred Scott to Brican America] is that we discussed it and [I] said, 'Okay. Go ahead and do this.'"

**Designated Matter No. 15:** NCMIC failed to disclose what, when, why, where and how NCMIC first received a copy of an advertising or marketing agreement between Brican America, Inc., Brican America, LLC, or Viso Lasik Medspas, on the one part, and any of the Plaintiffs on the other part.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

6

of striking NCMIC's pleadings be issued for NCMIC's conduct throughout the discovery

---

**Designated Matters Nos. 16 and 17:** NCMIC failed to disclose what, when, why, where and how NCMIC inquired of Brican America, Inc., concerning the copy of the advertising or marketing agreement it first received and has failed to disclose what, when, why, where and how were any such inquiries by NCMIC of Brican America, Inc., answered by Brican America, Inc.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**Designated Matters Nos. 19 and 20:** NCMIC failed to disclose what, when, why, where and how NCMIC performed any due diligence on Brican America, Inc., and its relationship to Recomm, and failed to disclose what, when why, where and how NCMIC performed any due diligence on the owners of Brican America, Inc., and their relationship to Recomm. Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**Designated Matter No. 21:** NCMIC failed to disclose what, when, why, where and how NCMIC took any action to make certain the fraudulent activities reported about Recomm were not duplicated in the business of Brican America, Inc. Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**Designated Matter No. 22:** NCMIC failed to disclose what, when, why, where and how NCMIC authorized Todd Cook to suggest to Brican America, LLC, changes in the language of the marketing agreement used by Brican America, LLC to sell Exhibeo Systems to Plaintiffs.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**Designated Matter No. 26:** NCMIC failed to disclose why and how was this response different than NCMIC's response to the information about the business of Recomm (owned by the same people sa Brican America, LLC,) provided to NCMIC by Harold Meredith in July, 2008.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

**Designated Matters Nos. 27 and 28:** NCMIC failed to disclose all of its knowledge concerning what Brican salespeople were representing concerning the NCMIC lease agreement, and failed to disclose all of its knowledge concerning what Brican salespeople were representing concerning the Brican lease agreement subsequently assigned to NCMIC.  Therefore, the trier of fact is authorized to construe whatever evidence is admitted on this issue against NCMIC and in favor of Plaintiffs.

process.[7]  In the alternative, the Plaintiffs request that, if the Court directs NCMIC to produce another 30(b)(6) deponent who can testify as to the Plaintiffs' designated topics, the Court order that the deposition be taken in Fort Lauderdale, Florida and that NCMIC bear all costs associated with the taking that deposition, including airfare and hotel.  The Plaintiffs further request that the discovery deadlines be extended accordingly, to conduct follow up discovery, if necessary, following the second 30(b)(6) deposition. Finally, the Plaintiffs request that NCMIC pay the attorney's fees associated with having to bring the instant Motion.

In response, NCMIC first contends that the Plaintiffs' Motion is untimely because the Plaintiffs failed, in compliance with the Local Rules, to bring this discovery-related dispute before the Court within thirty days of the dispute (DE # 304 at 1).  NCMIC further contends that the Plaintiffs' request for sanctions is improper because the Plaintiffs failed to first file a motion to compel seeking to compel the production of a 30(b)(6) deponent.  NCMIC further asserts that it did not violate its obligations pursuant to 30(b)(6) as it designated deposition testimony of current and former NCMIC employees as to those issues identified by the Plaintiffs to which testimony had already been obtained in their individual depositions.  NCMIC also contends that it produced Gregory Cole, who had already testified in his individual capacity, to testify as to the designated topics where no deposition testimony had been previously provided.  NCMIC contends that there were no more than ten current and former NCMIC employees who had any

---

[7] **Plaintiffs also contend  that NCMIC tampered with a witness and destroyed a file that NCMIC should have produced.  The Plaintiffs have filed two additional Motions for Sanctions related to those contentions (DE ## 290, 294).  Those Motions are resolved by way of separate orders.**

significant involvement with or responsibility for the Brican account, and that Plaintiff deposed all of them.  Thus, NCMIC argues that in this case, unlike the typical situation where a 30(b)(6) deposition is taken of one person who has gathered all of the institution's knowledge, because all of the persons with information regarding NCMIC's dealings with Brican were deposed, NCMIC has satisfied its obligations under Rule 30(b)(6).

In Reply, the Plaintiffs reiterate that Defendant NCMIC failed to properly prepare a corporate witness because the testimony of the witnesses provided by NCMIC was based solely on their memories and not based upon a review of documents in NCMIC's possession.  Plaintiffs note that the witnesses who were deposed in their individual capacity did not have an obligation to review NCMIC documents because they were not deposed in a corporate representative capacity.  Thus, Plaintiffs assert that NCMIC failed to provide a corporate representative witness who was able to testify fully to NCMIC's institutional knowledge.

III.   **LEGAL FRAMEWORK**

Federal Rule of Civil Procedure 30(b)(6) provides:

> [A] party may name as the deponent a public or private corporation. . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . .The persons designated must testify about information known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6).  A corporation must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought and to prepare those

persons in order that they can answer fully, completely, unevasively, the questions

posed as to the relevant subject matters. *Bank of New York v. Meridien BIAO Bank*

*Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) (citations and quotations omitted)).  As

explained in *Elan Microelectronics Corp. v. Pixcir Microelectronics Co., Ltd.*, Case No.

2:10-cv-00014, 2013 WL 4101811, at *1 (D. Nev. 2013):

> The duty to prepare a Rule 30(b)(6) designee goes beyond
> matters personally known to the witness or to matters in
> which the designated witness was personally involved. The
> duty to produce a prepared witness on designated topics
> extends to matters not only within the personal knowledge of
> the witness but on matters reasonably known by the
> responding party. By its very nature, a Rule 30(b)(6)
> deposition notice requires the responding party to prepare a
> designated representative so that he or she can testify on
> matters not only within his or her personal knowledge, but
> also on matters reasonably known by the responding entity.
> (citations and quotations omitted).

*Id.* at *5.  Further, the fact that an organization no longer has a person with knowledge

on the designated topics does not relieve the organization of the duty to prepare a Rule

30(b)(6) designee. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.), *aff'd*, 166 F.R.D.

367 (1996).  Thus, a corporation must prepare its Rule 30(b)(6) designee to the extent

matters are reasonably available, whether from documents, past employees, or other

sources. *Id.* citing *Ierardi v. Lorillard, Inc.*, No. 90-7049, 1991 WL 158911, at *1 (E.D. Pa.

Aug. 13, 1991).

    IV.    <u>ANALYSIS</u>

        A.    <u>The Plaintiffs' Motion is Deemed Timely</u>

      As stated above, NCMIC first contends that the Plaintiffs' Motion for Sanctions is

untimely because the deposition of the 30(b)(6) representative was conducted on

January 17, 2012, yet the Plaintiffs did not raise this issue before the Court until March 5,

2012, nearly seven weeks after the completion of the deposition.  NCMIC contends that such delay violates Local Rule 26.1(h)(1), which requires that all motions related to discovery be filed within thirty (30) days of the occurrence of the grounds for the motion.[8]

In response, the Plaintiffs contend that any delay in filing the Motion was due to the Parties' attempts to resolve the issue prior to seeking court intervention, which were commenced immediately after the conclusion of the 30(b)(6) deposition.

Local Rule 26.1(h)(1) provides:

> (1) *Time for Filing*. All motions related to discovery, including but not limited to motions to compel discovery and motions for protective order, shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought.

Although the Rule by its plain language directs that motions related to discovery *shall* be filed within thirty days of the occurrence, and failure to do so may constitute a waiver of the relief sought, the Rule also provides that the presumption of waiver may be overcome upon a showing of reasonable cause for a tardy filing.

In this case, it is undisputed that prior to the 30(b)(6) deposition, the Plaintiffs made clear that they objected to Defendant NCMIC's intention to rely upon prior deposition testimony instead of producing a corporate representative to testify as to the topics designated by the Plaintiffs.  In addition, after the deposition of the 30(b)(6) representative Gregory Cole, the Plaintiffs took additional depositions of NCMIC

---

[8]  The undersigned notes that the Discovery Procedures attached to the Court's Scheduling Order require a Party to seek relief in connection with a discovery dispute within 15 days rather than 30 days (DE # 44).

employees, the last of which occurred January 23, 2012.  On January 22, 2012, the

Plaintiffs alerted the Defendant that they intended to file a motion related to the 30(b)(6)

deposition, and explained that, based upon the relief sought in the Motion for Sanctions,

the Plaintiffs believed that the motion was actually more properly viewed as a motion in

limine.  On January 27, 2013, Plaintiffs received the official transcript from the 30(b)(6)

deposition. It is undisputed that thereafter, on February 23, 2013, Plaintiffs served a draft

of the Motion for Sanctions on NCMIC.  In an effort to comply with Local Rule 7.1, which

requires consultation between the parties prior to filing a motion, the Plaintiffs

requested that NCMIC indicate whether NCMIC objected to the Motion to the extent that

it exceeded twenty (20) pages.[9]  NCMIC responded that it would provide a written

response to the Plaintiffs' request the week following February 25, 2012.  On or about

March 5, 2013, NCMIC responded that it objected to the Motion exceeding twenty pages.

That same day, the Plaintiffs filed a Motion for Permission to File Motion in Excess of 20

Pages that attached the instant Motion seeking sanctions based upon the 30(b)(6)

deposition (DE # 271).[10]

---

[9]  NCMIC has not requested an opportunity to file a sur-reply to rebut the
assertions by the Plaintiffs related to this issue, and the time for doing so has long-
expired.  As such, the undersigned accepts the Plaintiffs' assertions regarding the
sequence of events and the reasons for the delay in filing the instant Motion for
Sanctions.

[10]  Initially, on March 5, 2012, the Plaintiffs filed the  Motion for Permission to File a
Motion and Incorporated Memorandum of Law in Excess of 20 Pages (DE # 271).
Attached to the Motion was a sixty-six (66) page proposed Motion in Limine seeking
sanctions  for NCMIC's conduct in discovery related NCMIC's failure to produce an
adequate (30)(b)(6) deponent, NCMIC's failure to preserve and produce a paper file
purportedly maintained by one of its former employees, and NCMIC's alleged witness
tampering.  The Motion requesting leave to file in excess of twenty pages was granted, in
part, by the District Judge who permitted the Plaintiffs to file a motion that did not
exceed forty pages in length (DE # 274).  The Plaintiffs thereafter filed three separate

Although Local Rule 26.1(h)(1) reflects a policy of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the court's attention matters that the parties cannot resolve amongst themselves, *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, Case No. 10-24310-CIV, 2011 WL 6190160, at *2 (S.D. Fla. Dec. 2, 2011), the Rule does not expressly require the imposition of sanctions when there is a failure to file such motion within the specified time period. *Id. Accord Kabula v. Southern Homes of Homestead VIII, Inc.*, Case No. 08-20685-CIV, 2008 WL 4691983, at *1 (S.D. Fla. October 22, 2008) (noting the permissive nature of Rule 26.1(h)); *Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09–CV–80787, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010) (stating Local Rule 26.1(h)(1) is "permissive and affords the Court discretion in whether to consider a late-filed motion.").

In this case, NCMIC has not asserted that it has suffered any prejudice as a result of the Plaintiffs filing the Motion more than thirty days after the occurrence which gave rise to the Motion.  In this regard, the undersigned notes that the Plaintiffs' delay in filing the Motion, while greater than *de minimis*, was a relatively short period of time, particularly given the complex nature of this multi-district litigation action. *See e.g. Chen*

---

Motions for Sanctions, one seeking sanctions for violations of NCMIC's 30(b)(6) obligations which totaled forty-three pages (DE # 284), one seeking sanctions for spoliation of a paper file, which totaled eighteen pages (DE # 290), and one seeking sanctions for witness tampering related to the testimony of Fred Scott, which totaled nineteen pages (DE # 308). Defendant NCMIC contends that the instant filing contravenes the Courts order regarding the number of pages permitted to be filed with regard to the sanctions motion.  However, the Defendant did not file a Motion to Strike the instant Motion, but instead only raised this issue in its Response to this Motion.  The undersigned declines to deny the instant Motion on this basis.

*v. Cayman Arts, Inc.*, Case No. 10-80236-CIV, 2011 WL 2491009, at *2 (S.D. Fla. June 22, 2011) (allowing tardy filing of discovery motion where length of time of delay was *de minimis* where party filed notice five days beyond the thirty day deadline set forth in the Local Rule). *But see Manno v. Healthcare Revenue Recovery Group*, Case No. 11-61357-CIV, 2012 WL 1409532 *1, (denying discovery related motion filed three days after thirty day deadline date set forth in local rules).

Thus, the undersigned concludes that, given the permissive nature of the Local Rule, and the fact that the Plaintiffs have established reasonable cause for the relatively short delay, the Plaintiffs have not waived the discovery dispute and the undersigned will address the merits of the Motion.

> **B.    Defendant NCMIC Failed to Produce an Adequate 30(b)(6) Deponent as to Certain Matters Identified in the Plaintiffs' Notice of Deposition and the Imposition of Sanctions is Appropriate For That Failure**
>
> > **1.    The Plaintiffs May Seek Sanctions for the Defendants' Failure to Produce an Adequate 30(b)(6) Deponent Notwithstanding the Fact that the Plaintiffs Did Not First File a Motion to Compel**

The Court next dispenses with Defendant NCMIC's argument that it is improper for the Court to issue sanctions for a failure to produce a 30(b)(6) deponent, where, as in this case, the Plaintiff failed to file a motion to compel prior to filing its motion for sanctions.

A district court has broad discretion to impose sanctions, which is derived from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991). Sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the

integrity of the discovery process. *Id.,* citing *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999).  Federal Rule of Civil Procedure 37(d) permits the imposition of sanctions when a party or person designated under Rule 30(b)(6) fails, after being served with proper notice,  to appear for that person's deposition." Courts have held that producing an unprepared witness is tantamount to a failure to appear at a deposition. *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (1996); *Cherrington Asia Ltd. V. A&L Underground, Inc*. 263 F.R.D. 653, 658 (D. Kan. 2010) (opining that if Rule 30(b)(6) witness is not adequately prepared to testify about topics properly identified in a notice to take the deposition, the court may impose various types of sanctions, including the imposition of reasonable attorney's fees and expenses caused by the failure); *Rahman v. The Smith & Wollensky Restaurant Group, Inc*., Case No. 06 Civ. 6198LAKJCF, 2009 WL 77334 *2, (S.D.N.Y. 2009) (same).

There is nothing in Rule 37(d) that requires the Plaintiffs to file a motion to compel prior to seeking sanctions for the conduct alleged in the instant Motion. Accordingly, the Plaintiffs may seek sanctions related to NCMIC's alleged conduct.

> **2.    Defendant NCMIC Improperly Designated Prior Deposition Testimony in Lieu of Producing a 30(b)(6) Corporate Representative for Deposition**

As stated above, the Plaintiffs contend that NCMIC failed to produce a corporate representative deponent who was prepared to provide testimony as to the actions taken by NCMIC related to the Brican entities.  The Plaintiffs contend that even assuming *arguendo* that it is permissible for an entity to rely on prior deposition testimony of individuals to satisfy the requirement under Fed. R. Civ. P. 30(b)(6), NCMIC has failed to produce witnesses who are able to provide such responsive testimony.  According to the Plaintiffs, none of the designated prior testimony from the five witnesses sufficiently

15

addresses NCMIC's corporate knowledge and/or actions relevant to the topics designated by the Plaintiffs.  In addition, the Plaintiffs assert that neither Paula Nazum Barkley, Jean Thompson, Fred Scott, Todd Cook or Greg Cole, upon whose prior deposition testimony NCMIC relies, had access to all of the relevant NCMIC records prior to their depositions from which they could prepare, and further note that the each of the individual deponents reviewed only a few documents prior to their depositions.  The Plaintiffs additionally note that none of the witnesses prepared for their respective individual depositions as a corporate representative in the manner required by Rule 30(b)(6), and none testified that they intended to provide testimony on behalf of the corporate entity.

The undersigned has reviewed the deposition testimony of each of the NCMIC witnesses who were deposed in their individual capacity, as well as the deposition of Greg Cole, who was deposed both in his individual and corporate representative capacities.  Based thereon, for the following reasons, the undersigned concludes that Defendant NCMIC has failed to fulfill its obligations pursuant to Rule 30(b)(6) to provide an adequate corporate representative for the deposition topics identified by the Plaintiff.

First, Defendant NCMIC suggests that the prior designated testimony from the individual depositions of the five past and former NCMIC employees satisfies NCMIC's obligation to produce a witness, as their testimony will serve to bind NCMIC as to those topic areas specifically identified by the Plaintiffs.  The flaw in NCMIC's contention is that none of the questions posed to the individual deponents, or the answers given by those witnesses, describe what actions NCMIC took, as a corporate entity, related to that specific topic. By way of example, the Plaintiffs sought information regarding the details of any due diligence performed by NCMIC on Brican America, Inc., prior to July 15, 2005

(Designated Matter # 1).[11]  In the testimony designated by NCMIC, Fred Scott testified that he did not recall investigating the length of time that Brican America, Inc., had been in business, or the financial status of Brican America Inc. prior to his signing of the general vendor agreement (DE # 284 at 15).  Mr. Scott did not offer any testimony about what NCMIC did as a corporate entity and did not even offer other testimony regarding what other employees of NCMIC did related to performing due diligence on the Brican entities.

In this same vein, in the deposition of Todd Cook, which was also designated by NCMIC as responsive to the due diligence topic, Mr. Cook was asked about the purpose of his trip to South Florida in 2008 (DE # 284-20 at 93).  In response, Mr. Cook explained that the trip was ". . . just a trip-a due diligence type trip." *Id.*  This answer in no way suggests what type of due diligence that NCMIC as a corporation performed regarding Brican. While the answer, in fact, may be that NCMIC performed no due diligence regarding Brican, the Plaintiffs are entitled to have a representative from NCMIC state such a response rather than have individuals testify about due diligence that they as individuals may or may not have performed, particularly where the responses are limited by the question of what that particular witness did, as opposed to what NCMIC, as a corporation, may or may not have done.  This same defect applies to the other inquiries related to the due diligence performed by NCMIC.

Similarly, as to the topic related to determining the amount of the loan to each Plaintiff which was secured by the equipment purchased by Brican (Designated Matter No. 9), NCMIC offered the testimony of Ms. Barkley, Mr. Thompson, Mr. Scott and Mr.

---

[11]  The undersigned refers to certain "Designated Matters" in the Plaintiffs' Notice of 30(b)(6) deposition as they correspond to those numbers in that Notice (DE # 284-1).

Cook.  The Plaintiffs contend that the testimony from those witnesses as to how the amount of the loan was determined varies, and includes extraneous testimony, and thus the Plaintiffs are unable to determine NCMIC's position on this particular issue.  The undersigned agrees.  Again, the Plaintiffs are entitled to understand, not what the employee witnesses in their individual capacities believe that NCMIC did to determine the amount of the loans, but to know what NCMIC's corporate position is on that issue.

Moreover, as argued by the Plaintiffs, the testimony designated by NCMIC more often than not fails to provide an adequate response to the substance of the inquiry.  This failure is made clear in the deposition testimony of Todd Cook that was, as stated above, designated by NCMIC as responsive to the inquiry of the due diligence performed by NCMIC, prior to 2005.  In Mr. Cook's individual deposition, any inquiry about Mr. Cook's due diligence was limited to questions about his trip to South Florida in 2008 (DE # 284-20 at 93).  Thus, there is no way that his testimony explains what, if any, type of due diligence that NCMIC performed regarding Brican prior to July 15, 2005.  In fact, at the 30(b)(6) deposition, Mr. Cole, who was testifying as NCMIC's corporate representative, acknowledged that there was nothing in Mr. Cook's testimony that was designated by NCMIC that was responsive to any due diligence performed by NCMIC prior to 2005 (DE # 284-15 at 13).[12]

---

[12] It is worth noting that it is unclear whether Mr. Cole was capable, based upon his own investigation and prior involvement in litigation related to Brican, of providing comprehensive corporate representative testimony on behalf of NCMIC as to those topics identified by the Plaintiffs.  This is so because Counsel for NCMIC would only permit Mr. Cole to testify as to those topics that NCMIC had determined had not already been sufficiently testified to by prior deponents.  By way of example, although Mr. Cole was not designated to testify as to the due diligence performed by NCMIC regarding Brican, at the 30(b)(6) deposition, when he was asked if he had reviewed materials to prepare for inquiry about NCMIC's due diligence efforts, Mr. Cole stated,

As to topics related to when NCMIC first learned of the identities of the Brican owners, NCMIC offered the prior testimony of Fred Scott and Mr. Cook.  However, the portion of Mr. Scott's testimony designated by NCMIC does not address when NCMIC first learned of the identities of Brican's owners but rather speaks to whether Mr. Scott investigated the background of those owners (DE # 284-17 at 12).  The designated testimony of Mr. Cook also fails to address the issue of when NCMIC discovered the identities of Brican's owners (DE # 284-20 at 24).

These same or similar failures occur throughout almost all of the topics for which Defendant designated prior testimony in lieu of producing a corporate representative for a deposition.  Thus, based upon a review of each of the Plaintiffs' designated topics and the prior testimony cited by the Defendant as providing adequate responses on behalf of NCMIC for those topics, the undersigned concludes that Defendant has failed to satisfy its obligations pursuant to Rule 30(b)(6).

It is for these reasons that this case is distinguishable from the cases cited by NCMIC where the designations of prior testimony provided the information sought

---

> If you're asking me if I specifically looked in a much more global scope in preparation for this deposition in the last few weeks since I received the subpoena notice, no; however, I have spent considerable time over the last approximately three years looking under every rock possible for any additional information.

(DE # 284-15 at 21).  Similarly, when asked about why no due diligence was performed, another topic for which Mr. Cole was not designated to testify, Mr. Cole responded, "Unfortunately, all of those individuals that were involved directly are no longer employed, as you are well aware, by NCMIC.  So anything that I've been able to determine has been after the fact, based upon any records and information available to me.  What those individuals may or may not know I can't testify to." (DE # 284-15 at 23). Thus, it is unclear why Defendant NCMIC refused to permit Mr. Cole to testify as to those issues related to due diligence on behalf of NCMIC as a corporate representative based upon his endeavor to find all additional information related to that topic.

related to the topic designated by a litigant.  In *Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 203 F.R.D. 159 (D. Del. 2001), for example, the court denied the plaintiff's request to redepose a witness in his official capacity where the witness in his individual capacity had already testified as to the specific topic and the defendant corporation agreed to be bound by that previous testimony.  In so doing, the court observed that the witness was the most knowledgeable person about the particular topic and was the same person who would have been designated under 30(b)(6) to testify as to that subject, and that such testimony from the witness would be cumulative to the testimony already procured. *Id*. at 163.  Such is not the case here.  The Plaintiffs are not requesting to redepose the deponents as to the same subjects for which they have already testified, rather, the Plaintiffs are seeking to have a witness produced by NCMIC who will provide complete testimony as to NCMIC's positions on various issues.  In this circumstance, the testimony sought by the Plaintiffs can hardly be viewed as cumulative.

In addition, although Defendant NCMIC correctly states that in *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012), the Court acknowledged that there is nothing in the rules to prohibit a corporation from adopting the testimony or position of another witness in a case, the Court noted that such a procedure would still require a corporate designee to "formally provide testimony that the corporation's position is that of another witness." *Id*. at 691.  Further, there is nothing in the Court's ruling in that case that suggests that a corporation may avoid its obligation to produce a Rule 30(b)(6) corporate representative for deposition by citing to prior testimony that is not responsive to the topics designated for testimony by the opposing party.

To reiterate, in this case, as discussed above, the testimony designated by NCMIC simply fails to provide adequate and clear information regarding NCMIC's position as to

20

the topics specifically identified by the Plaintiffs.  As such, the undersigned concludes

that the prior testimony designated by NCMIC is insufficient to satisfy NCMIC's

obligation of producing a 30(b)(6) deponent.

C.  <u>NCMIC Failed to Adequately Prepare Mr. Cole for his 30(b)(6)<br>Deposition as to Certain Topics Designated by Plaintiffs</u>

The Plaintiffs also allege that Mr. Cole was not adequately prepared to testify as

to certain topics for which he was designated as the 30(b)(6) witness.  Specifically, the

Plaintiffs contend that Mr. Cole failed to prepare adequately for: 1) Issues related to how

NCMIC gave authorization to Brican to utilize marketing or advertising agreements

(Designated Matter # 11); 2) Details of how NCMIC formulated a program to support

Brican's return policy (Designated Matter # 12); 3) Details of how NCMIC understood

Brican's return policy (Designated Matter # 13); 4) Details of how Fred Scott was

authorized to commit NCMIC to a program to support Brican's return policy (Designated

Matter # 14); and, 5) All knowledge concerning what Brican salespeople were

representing concerning the NCMIC lease agreement and the Brican lease agreement

subsequently assigned to NCMIC (Designated Matters ## 27, 28).

Although the Plaintiffs' arguments regarding the inadequate preparation of Mr.

Cole as to the topics testified to at the 30(b)(6) deposition are less persuasive than those

advanced regarding NCMIC's reliance on the designation of former testimony in lieu of

producing a 30(b)(6) witness, the undersigned concludes that there were, in fact, certain

topics for which Mr. Cole was not adequately prepared to testify as NCMIC's corporate

representative.  The undersigned addresses those topics, in turn.

As to those issues related to NCMIC's authorization to Brican to utilize marketing

and advertising agreements and NCMIC's program to support a Brican return policy, the

21

Plaintiffs contend that Mr. Cole's review of the depositions of Todd Cook, Paula Nuzum Barkley, Jean Thompson and Fred Scott was insufficient to prepare him to testify on this topic.  The Plaintiffs assert that NCMIC should have interviewed its former employees who were in a position to authorize NCMIC's actions regarding the marketing and advertising agreements and any NCMIC program used to support Brican's return policy.

The Plaintiffs' argument is not convincing given the facts of this case.  Indeed, as to Designated Matters Nos. 11, 12 and 14, which relate to NCMIC's authorization, through Fred Scott, for Brican to use certain marketing and advertising agreements to support Brican's return policy, NCMIC has consistently denied that it gave any such authorization.  Specifically, in NCMIC's 30(b)(6) deposition, Mr. Cole was asked directly if it was NCMIC's position that NCMIC gave authorization to Brican America, Inc., to utilize marketing or advertising agreements (DE # 284-15 at 28-29).  Mr. Cole answered that query in the negative and further explained that he reviewed certain deposition testimony, which included a review of an exhibit to Mr. Scott's deposition which reflected communications between Mr. Scott and the owners of Brican related to the marketing agreement and NCMIC's purported authorization to Brican related to those agreements.[13]  Included in those communications was an email that Mr. Scott allegedly

_____

[13] The correspondence at issue relates to the alleged discussions that Mr. Scott, a NCMIC salesman/business development manager, had with shareholders of Brican (Mr. Vincens and/or Mr. Briscoe) involving NCMIC's support of the Brican return policy for equipment returned by the customer to Brican prior to completion of payment under the lease agreement (DE # 294-6).  The Plaintiffs have cited to such correspondence as demonstrating that NCMIC authorized Brican's use of certain marketing and advertising agreements.  Further, Plaintiffs suggest that Bill Artino, the former vice-president and general manager of equipment finance of NCMIC, received a copy of the letter sent by Fred Scott to Brican related to the return policy and thus suggest that Mr. Artino authorized Mr. Scott to agree to Brican's use of certain marketing and advertising agreements which included Brican's return policy. The issue as to the creation and circumstances related to this particular correspondence is further addressed in the

sent to Mr. Artino, the former vice-president of NCMIC, seeking his assistance regarding Brican's return policy (DE # 294-6 at 1).  It is undisputed that Mr. Cole did not speak with Mr. Artino prior to the 30(b)(6) deposition.  However, Counsel for the Plaintiffs acknowledged during Mr. Cole's 30(b)(6) deposition that it would be unlikely that Mr. Cole would have spoken to Mr. Artino about any such correspondence because of the "litigious relationship between Mr. Artino and NCMIC." (DE # 284-15 at 30). In addition, Mr. Artino was deposed in his individual capacity the day after NCMIC's 30(b)(6) deposition (DE # 284-23). During that deposition, Mr. Artino testified that he didn't remember receiving the email at issue from Mr. Scott, did not remember anything about an agreement with Brican to support Brican's return guarantee conditions, couldn't recall if Mr. Scott would need Mr. Artino's authorization to send the correspondence at issue, and didn't recall speaking to Mr. Scott about the issue (DE # 284-23 at 61-63). Thus, it is unclear what additional interviews of "former employees who were in a position to authorize Brican America to utilize marketing or advertising agreements," that Mr. Cole should have conducted on this issue to prepare for the deposition.  In addition, unlike the concerns regarding the individual deponents' testimony with regard to binding NCMIC to their answers, Mr. Cole's answers regarding NCMIC's position on this issue are clear and binding. This same analysis applies as to Plaintiffs' request for information about the details of the NCMIC program described by Fred Scott as "supporting Brican America's return policy" (Designated Matter # 12), and the details of how NCMIC authorized Mr. Scott to commit to the NCMIC program which allegedly supported Brican America's return policy if the Lease Agreement was terminated by the

Plaintiffs' Motions for Sanctions for destruction of a paper file, and witness tampering, which are resolved by way of separate orders.

customer (Designated Matter #14). As such, the undersigned concludes that NCMIC adequately prepared Mr. Cole for these topics.

However, as to Designated Matter # 13, the Plaintiffs' request for information regarding the details of what NCMIC understood Brican America's return policy to be as of June 19, 2006, the Plaintiffs accurately point out that, according to deposition testimony, there may have been, at least, four NCMIC employees, Todd Cook, Jo Lynn Quick, Lanette Henningsen and Jean Thompson, who possibly had information regarding such a return policy.  NCMIC, through Mr. Cole's testimony, failed to assert that interviews had been conducted of these employees related to this issue, and further Mr. Cole did not indicate that he reviewed the depositions of Ms. Quick and Ms. Henningsen in preparation for his deposition.  It is of no moment that certain of those employees may no longer work for NCMIC.  Indeed, when "[f]aced with such a scenario, a corporation with no current knowledgeable employees must prepare its designees by having them review available materials, such as fact witness deposition testimony, exhibits to depositions, documents produced in discovery, materials in former employees' files and, if necessary, interviews of former employees or others with knowledge." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012), citing *Great Am. Ins. Co. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 540 (D. Nev. 2008). Thus, in light of Mr. Cole's testimony that he found no evidence that there was ever such a return policy, Mr. Cole was not adequately prepared as a corporate representative deponent on behalf of NCMIC to testify as to this issue.

Further, as to those topics related to NCMIC's knowledge of representations made by Brican salespeople (Designated Matters ## 27 and 28), the Plaintiffs contend that the deposition testimony of Mr. Cook indicates that NCMIC received a thirty-page

PowerPoint presentation which Mr. Cook believed was presented to Brican customers by Brican representatives (DE # 284 at 35).  However, at the 30(b)(6) deposition of Mr. Cole, he testified that he had not reviewed that document prior to his deposition because he had previously reviewed the PowerPoint presentation and it did not mention either NCMIC or PSFS (DE # 284-15 at 58-59).  In response to the Plaintiffs' assertion that Mr. Cole should have reviewed the presentation in preparation for his 30(b)(6) deposition, NCMIC merely states that, pursuant to Greg Cole's testimony as the 30(b)(6) representative, NCMIC could not possibly have had either personal or institutional knowledge of what each of the Brican salespeople were representing to the individual customers (DE # 304 at 19).

However, based upon a review of Mr. Cole's 30(b)(6) testimony, it is clear that Mr. Cole should have reviewed the PowerPoint presentation prior to his deposition, as he clearly knew prior to that time that the presentation received by NCMIC in July of 2008 contained information regarding what Brican sales people were representing in sales transactions.  The fact that the presentation may or may not have mentioned NCMIC or PSFS does not negate the fact that the presentation likely contained information regarding the Brican lease agreement as requested in at least one of the matters designated by the Plaintiffs.  As such, Mr Cole failed to adequately prepare to testify on behalf of NCMIC on these issues.

Finally, Mr. Cole made clear in his deposition, that he reviewed relatively few documents in preparation for the 30(b)(6) deposition.  Specifically, Mr. Cole testified that he reviewed depositions, including his own, and one or two e-mails that were mentioned in those depositions (DE # 284-15 at 3).  In addition, in response to the Schedule of Documents to Be Produced, at the 30(b)(6) deposition, the Plaintiffs assert, and NCMIC

does not dispute, that Mr. Cole only produced 92 pages of documents, 80 of which were sales materials that did not come into Brican's possession until after NCMIC stopped funding Brican transactions (DE # 284 at 9).  It is hard to fathom that a 30(b)(6) corporate representative would not review more documents in preparation for a deposition, particularly in a paper-intensive complex case like the one at bar.

Based on the foregoing, it is clear that NCMIC failed to adequately prepare Mr. Cole as to several of the topics specifically designated by the Plaintiffs.

### D.   Sanctions Are Appropriate For NCMIC's Failure To Produce an Adequate Rule 30(b)(6) Deponent

As stated above, Fed. R. Civ. P. 37(d) permits the imposition of sanctions when a party or person designated under Rule 30(b)(6) is unprepared to testify in that capacity. In addition, a court may impose sanctions for litigation misconduct under its inherent power which derives from the court's need to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  This power, however, "must be exercised with restraint and discretion." *Id.* citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Therefore, generally, the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders. *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1306 (11th Cir. 2006) (internal citation and quotation omitted).  Accordingly, because the undersigned has concluded that NCMIC failed to fulfill its obligations pursuant to Rule 30(b)(6) to produce an adequate corporate representative for the deposition topics identified by the Plaintiff, sanctions shall be imposed.

The Plaintiffs have requested that the Court, in imposing sanctions, either strike NCMIC's pleadings or, in the alternative, permit the Plaintiffs to conduct a second deposition of a 30(b)(6) NCMIC corporate representative with NCMIC being taxed with all costs associated with taking that deposition.  Further, the Plaintiffs have requested that the Court issue an Order in limine which establishes a "beneficial inference" for the Plaintiffs as to those topics for which NCMIC failed to produce an adequate witness. Plaintiffs also request that they be reimbursed from NCMIC for fees and costs incurred in bringing this Motion.

Based upon a careful review of the circumstances involving NCMIC's failure to produce an adequate 30(b)(6) deponent, the undersigned concludes that NCMIC's conduct related to this issue does not warrant the extreme sanction of striking NCMIC's pleadings.  *See e.g. Continental Casualty Co. v. First Financial Employee Leasing*, Inc., 716 F. Supp. 2d 1176, 1193 (M.D. Fla. 2010) (imposing sanctions in the form of costs and attorney's fees but declining to strike litigant's pleading where corporate representative was not fully prepared to speak for the corporation as to certain topics).[14]  Rather, although NCMIC improperly designated prior deposition testimony as to certain topics identified by the Plaintiffs, the Court notes that NCMIC did produce those deponents in their individual capacities for deposition on issues related to NCMIC's dealings with Brican and also produced Mr. Cole to testify to certain other topics.

In addition, the undersigned further concludes that the failure of Defendant

---

[14] To the extent that the Plaintiffs have requested in three motions for sanctions, (DE ## 284, 290, 294), including this one, that NCMIC's pleadings be stricken for NCMIC's purported various discovery violations, that request is addressed in the undersigned's Order on the Plaintiffs' Motion for Sanctions for Witness Tampering (DE # 294), which is filed contemporaneously with the instant Order.

NCMIC to produce an adequate 30(b)(6) deponent is not sufficiently egregious for the Court to issue an order in limine as to "beneficial" inferences requested by the Plaintiffs as set forth above in this Order.  In this regard, it bears noting that NCMIC has agreed, to some extent, to be bound by the testimony of the designated deponents.  Specifically, in its Response to the Motion, NCMIC states, "If this matter proceeds to trial, Plaintiffs will have the opportunity to make whatever inference about these gaps that they wish . . . ." and further states, "For better or worse, NCMIC is bound by the gaps in their memories of its current and former employees." (DE # 304 at 10). Thus, although NCMIC stops short of conceding that the Plaintiffs are entitled to a beneficial inference for Plaintiffs as to those topics for which NCMIC has failed to produce an adequate 30(b)(6) deponent, NCMIC implicitly acknowledges that it will be unable to "fill in" any gaps related to those omissions at trial.

Therefore, the undersigned has determined that the appropriate remedy is that the Plaintiffs, at their choosing, may either conduct a second Rule 30(b)(6) corporate representative deposition as to those topics for which NCMIC elected to designate prior testimony, and for those topics where Mr. Cole's preparation was incomplete; or, that the Plaintiffs may serve additional interrogatories as to those designated topics.   If the Plaintiffs elect to re-depose NCMIC's corporate representative, the deposition should be limited to those topics for which deposition testimony has not been provided.[15]

---

[15] The undersigned recognizes that although it appears from the record that NCMIC president, Gregory Cole, likely would be an adequate 30(b)(6) deponent once he reviewed the relevant documents and spoke to the appropriate witnesses, the essence of a 30(b)(6) deposition is to permit the corporation to designate an adequate corporate representative to testify.  Thus, neither the Plaintiffs nor the Court should specifically identify the witness(es) that NCMIC will present at the deposition to testify on the topics identified by the Plaintiffs in the 30(b)(6) capacity.

Specifically, the Plaintiffs may inquire as to the following topics:

1.      The details of any due diligence that NCMIC performed on Brican America, Inc., prior to July 15, 2005, and if no due diligence was performed on Brican America, Inc., NCMIC's reasons for not doing so (Plaintiffs' Designated Matters ##1, 2).

2.      When NCMIC first learned the identities of the owners of Brican America, Inc., and Brican America, LLC, and any due diligence performed on the owners. If no due diligence was conducted on the owners, NCMIC's reasons for not doing so (Plaintiffs' Designated Matter ## 3, 4, 5, 6, 7, 8).

3.      Details of how NCMIC determined the amount it would loan to each Plaintiff secured by the equipment which was being purchased from Brican America, Inc., or Brican America, LLC. (Plaintiffs' Designated Matter # 9).

4.      Details of how NCMIC learned of the utilization of any marketing or advertising agreements by Brican America, Inc. (Plaintiffs' Designated Matter # 10).

5.      Details of how NCMIC first received a copy of an advertising or marketing agreement between Brican America, Inc., Brican America, LLC, or Viso Lasik Medspas, and any of the Plaintiffs  (Plaintiffs' Designated Matter # 15).

6.      Details of how NCMIC inquired of Brican America, Inc., concerning the copy of the advertising or marketing agreement it first received and Brican's responses to those inquiries (Plaintiffs' Designated Matters ## 16, 17).

7.      Details of any due diligence by NCMIC on Brican America, Inc., and its

relationship to Recomm and due diligence performed by NCMIC on owners of Brican America, Inc., as to their relationship to Recomm.[16]  (Plaintiffs' Designated Matters ## 19, 20).

8.     Details of how NCMIC took any action to make certain that fraudulent activities reported about Recomm were not duplicated in the business of Brican America, Inc. (Plaintiffs' Designated Matter # 21).

9.     Details of how NCMIC authorized Todd Cook to suggest to Brican America, LLC, changes in the language of the marketing agreement used by Brican America, LLC, to sell Exhibeo Systems to Plaintiffs (Plaintiffs' Designated Matter # 22).

10     Details of NCMIC's response to information provided about Recomm by Harold Meredith in July, 2008  (Plaintiffs' Designated Matter # 26).

11.     Details of how NCMIC understood Brican America's return policy to be as of June 19, 2006  (Plaintiffs' Designated Matter # 13).

12.     All knowledge concerning what Brican salespeople were representing concerning the NCMIC lease agreement, and agreements subsequently assigned to NCMIC  (Plaintiffs' Designated Matters ## 27, 28).

Any 30(b)(6) deposition taken pursuant to this Order shall be scheduled to occur on or before October 30, 2013, in Fort Lauderdale, Florida, as requested by the Plaintiffs and

---

[16] "Recomm" refers to another corporate entity purportedly owned by the owners of Brican that allegedly was the subject of allegations of a "ponzi scheme" which was discussed in articles published in Tampa Bay Tribune.  The articles were forwarded to NCMIC's president sometime in April 2009 and are significant to determining when NCMIC arguably should have been alerted to the possibility that the Brican business model related to the financing the Plaintiffs' leases through revenue generated from the Marketing Agreements was unsustainable.

shall be limited to a total of four and one-half hours.

In addition, pursuant to Fed. R. Civ. P. 37(d), the undersigned orders that the costs associated with scheduling and facilitating the second deposition of NCMIC's corporate representative be borne by NCMIC for its failure to adequately produce such a witness at the initial deposition.  However, the attorney's fees incurred during that second deposition will be borne by the Plaintiffs, as those costs would have been incurred in any event if Mr. Cole had been permitted to testify as to all of the designated topics at the first deposition.[17]  Nor will travel costs and hotel expenses be awarded to Plaintiffs' counsel since this continued deposition will occur where Plaintiffs' counsel is located.

If the Plaintiffs elect to serve interrogatories on NCMIC as set forth in Attachment A to this Order, those interrogatories shall be responded to by NCMIC within fifteen (15) days of service.  The Plaintiffs shall serve such interrogatories on or before October 15, 2013.

Finally, in addition to either producing to 30(b)(6) deponent or answering interrogatories, NCMIC shall bear the reasonable costs, including attorneys' fees, associated with preparing the instant Motion for Sanctions (DE # 294).  The Parties shall consult in an effort to agree upon the amount of said costs.  If the Parties are unable to reach an agreement, the Plaintiffs may file an appropriate motion requesting those costs, and shall submit detailed time records and/or receipts to support the amount sought in that request.

---

[17]  In this regard, the undersigned notes that the transcript of the 30(b)(6) deposition of Mr. Cole conducted on January 17, 2012, reflects that the deposition commenced at 10:08 a.m., and concluded at 12:25 p.m.  Thus, the time spent on the deposition was relatively brief.

## V.      CONCLUSION

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Sanctions (DE # 284)

related to Defendant NCMIC's purported failure to produce a NCMIC corporate

representative for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), is

**GRANTED, in part**.  To the extent that Plaintiffs request to be able to conduct

additional discovery related to the topics designated in the Plaintiffs' 30(b)(6) Deposition

Notice, the Motion is Granted.  To the extent that the Plaintiffs' request to strike NCMIC's

pleadings the Motion is Denied.

It is further

**ORDERED AND ADJUDGED** that Plaintiffs may either conduct an additional

Rule 30(b)(6) deposition subject to the conditions set forth above or, that the Plaintiffs

may serve interrogatories as to those topics.

It is further

**ORDERED AND ADJUDGED** that NCMIC shall bear the costs associated with

preparing the instant Motion for Sanctions (DE # 284), only.

**DONE AND ORDERED** in chambers in Miami, Florida on October 1, 2013.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
         All Counsel of Record via CM/ECF