UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-md-02183-PAS

IN RE: Brican America LLC
Equipment Lease Litigation
_____/

## RULE 54(B) CERTIFICATION

In this multidistrict litigation, Plaintiffs sued two groups of Defendants: Brican and NCMIC. Plaintiffs bought multimedia systems from Brican and financed their purchases through Financing Agreements now held by NCMIC.[1] Plaintiffs allege that Brican sold these systems as being effectively free, promising in a Marketing Agreement executed with each purchase that (1) a "medspa" named Viso Lasik would buy enough advertising to offset Plaintiffs' monthly payments and (2) Brican would buy back the Financing Agreements if the advertising payments stopped. When the advertising payments stopped, NCMIC insisted that Plaintiffs keep making payments and they refused, asserting fraudulent inducement. After NCMIC sued each Plaintiff individually in Iowa to enforce the Financing Agreements, Plaintiffs filed these actions, seeking to bar NCMIC from enforcing these Financing Agreements or, in the alternative, to hold Brican liable for any payments due thereunder. NCMIC's collection actions in Iowa are stayed pending the outcome of this case.

Plaintiffs fall into two groups. Approximately 1,000 signed three-column Financing Agreements directly with NCMIC. Approximately 1,400 signed one-column Financing Agreements with Brican America, Inc. that were later assigned to NCMIC.[2]

---

[1] There were some Plaintiffs with Financing Agreements held by Brican Financial Services, LLC, but those Plaintiffs have voluntarily dismissed all claims. [DE-636.]

[2] Most transactions involved two Plaintiffs: a corporate obligor and an individual guarantor. [*See* DE-658; DE-665.] These figures therefore reflect approximately 500 individual three-column Plaintiffs and 700 individual one-column Plaintiffs.

As to the three-column Plaintiffs, the Court held, in two summary judgment orders, that the Financing Agreements were enforceable because the relevant Marketing Agreements promised not that Plaintiffs could cancel their Financing Agreements, but that Brican would buy them back. [DE-413; DE-509.] NCMIC has dismissed any counterclaims against the three-column Plaintiffs. [DE-655; DE-656.] Accordingly, final judgments have been entered in favor of NCMIC on all claims by the three-column Plaintiffs [DE-671; DE-672], and all claims between NCMIC and the three-column Plaintiffs have been finally resolved. NCMIC intends to apply these judgments in the Iowa actions.[3]

As to the one-column Plaintiffs, following a bench trial, the Court found that Brican America, Inc. intended to fraudulently induce almost all of them into signing their one-column Financing Agreements. The Court further ruled that, for those Plaintiffs who could establish reliance on the inducing promise, the Financing Agreements could not be enforced because NCMIC, to whom Brican America, Inc. assigned them, was not a holder in due course under Fla. Stat. § 679.4031(2) and the close connection doctrine. [DE-596.]

The Court and the parties were justifiably concerned about the costs of holding 700 individualized reliance trials if the Court's earlier rulings were not affirmed on appeal. Therefore, in a bellwether second bench trial, the Court heard testimony from eight individual Plaintiffs. The Court found that seven had proven reliance. [DE-647.] Accordingly, final judgment was entered in favor of those individuals and their corporate entities, totaling fourteen. [DE-670.] These fourteen have dismissed their remaining claims against NCMIC, and NCMIC has dismissed any counterclaims

---

[3] Plaintiffs' claims against Brican will not affect the enforceability of the Financing Agreements or the finality of these judgments. Moreover, each Brican Defendant has either stipulated to liability or been dismissed. [*See* DE-660.]

against them. [DE-615; DE-620.] Therefore, all claims between NCMIC and these fourteen Plaintiffs have been finally resolved.

The two issues remaining as to approximately 1,380 one-column Plaintiffs are (1) reliance and (2) their alternative and narrowed FDUTPA claims. Based on the second bench trial, it will take 174 trial days to hear testimony from the remaining Plaintiffs on the first issue, reliance.

Pursuant to Rule 54(b), and considering "judicial administrative interests as well as the equities involved," *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (citation omitted), the Court certifies that there is no just reason for delay in entering final judgment as to all claims between NCMIC and the three-column Plaintiffs and these fourteen one-column Plaintiffs. The Court has ruled on all issues as to these Plaintiffs. *See Nat'l Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil*, 784 F.2d 817, 821 (7th Cir. 1986) (a final judgment as to one party is appealable "even if identical claims remain pending between the remaining parties").

As to the remaining one-column Plaintiffs, mediations have not been successful. It would materially advance this litigation for the parties to obtain appellate review of the Court's summary-judgment, fraudulent-inducement, and holder-in-due-course rulings before hearing evidence for 700 individualized reliance determinations that may turn out to be unnecessary. Additionally, if the summary-judgment rulings are affirmed, it would permit NCMIC to enforce the three-column Financing Agreements in Iowa without waiting for a resolution as to each one-column Financing Agreement. Finally, it would allow the Court to correct any errors sooner rather than later.

DONE AND ORDERED in Miami, Florida, this 7th day of May, 2015.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE